Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
Julian P. Vasek, Esq.
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

ATTORNEYS FOR SCOTT M. SEIDEL, TRUSTEE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 7 |
| WALNUT HILL PHYSICIANS' | § | |
| HOSPITAL, LLC, | § | Case No. 17-32255-bjh7 |
| | § | |
| Debtor. | § | |
| | § | |
| SCOTT M. SEIDEL, TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Adversary No. 18-03033-bjh |
| v. | § | |
| | § | |
| ST. JUDE MEDICAL S.C., INC., | § | |
| | § | |
| Defendant. | § | |

**TRUSTEE'S (A) MOTION FOR CONTEMPT, FOR SANCTIONS, AND TO COMPEL PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES; AND (B) RESPONSE TO ST. JUDE'S MOTION FOR PROTECTIVE ORDER**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Scott M. Seidel (the "Trustee"), the duly appointed chapter 7 trustee of the bankruptcy estate (the "Estate") of Walnut Hill Physicians' Hospital, LLC (the "Debtor"), the debtor in the above styled and numbered bankruptcy case (the "Bankruptcy Case"), and the

plaintiff in this Adversary Proceeding (the "Adversary Proceeding") filed against St. Jude Medical S. C., Inc. ("St. Jude"), and files this his *Trustee's (A) Motion for Contempt, for Sanctions, and to Compel Production of Documents and Answers to Interrogatories; and (B) Response to St. Jude's Motion for Protective Order*, respectfully stating as follows:

## I.    SUMMARY

1.    The Court previously granted the Trustee's motion to compel and ordered St. Jude to search archived emails and produce responsive communications. St. Jude refuses to comply with that order. Instead, St. Jude conducted a grossly deficient search and produced only sixteen pages of emails. Then, *at St. Jude's request*, the Trustee recommended expanded search parameters, but St. Jude refused to undertake the revised search. In part, St. Jude is relying on its document retention policy, under which emails either are not "preserved" or are "purged" after only thirty days. But despite repeated requests, St. Jude refuses to clarify this equivocal language. It has flatly refused to state whether the emails exist, instead resorting to careful doublespeak. To "purge" an email from an employee's inbox, for example, is not the same thing as permanently destroying it such that no copy exists anywhere. And if St. Jude really does permanently destroy emails after only thirty days, then it has a serious spoliation issue.

2.    The Trustee therefore sent one interrogatory and three document requests aimed at discovering St. Jude's document retention policy and the identities of the individuals responsible for it. But St. Jude refused to produce that information too. Instead, St. Jude filed a flagrantly premature motion for summary judgment and motion for protective order, seeking to have the Court adjudicate this case on the limited, hand-selected evidence St. Jude has seen fit to disclose. That is not how civil litigation works.

3. Here we are some seven months after the Trustee first served his document requests, and more than two months after the Court entered its order compelling production, and the Trustee still does not have the most basic discovery that he is entitled to obtain. That has put all remaining discovery and the forward progress of this Adversary Proceeding on hold. St. Jude is in contempt of the Court's previous order, and it is in default under its ongoing discovery obligations. The Court should award the Trustee sanctions and compel St. Jude to produce the requested documents and communications. The Court should also reconsider its prior decision not to award the Trustee his attorney's fees for having to file his motion to compel, as the Estate's creditors should not bear the burden of forcing St. Jude to comply with this Court's Order.

## II.    BACKGROUND

4. As an initial matter, the Trustee incorporates herein by reference the allegations in and the evidence attached to his *Motion to Compel Discovery Responses and Production* (Dkt. No. 9, the "Motion to Compel"). Attached hereto is the Trustee's *Appendix in Support of (A) Motion for Contempt, for Sanctions, and to Compel Production of Documents and Answers to Interrogatories, and (B) Response to Motion for Protective Order* (the "Appendix"), which includes the evidence attached to the Motion to Compel.[1]

5. Following a hearing on June 21, 2018, the Court entered its *Order Granting in Part and Denying in Part Trustee's Motion to Compel Discovery Responses and Production* (Dkt. No. 23, the "Order"). A copy of the Order is attached hereto as Exhibit L. Among other things, the Order provided as follows:

---

[1] In addition to the other evidence cited herein, the following facts are supported by the Declaration of Julian P. Vasek, included in the Appendix as Exhibit T.

> ORDERED that St. Jude's objections to First RFP No. 1, First RFP No. 2, First RFP No. 3, First RFP No. 4 (except as to work product as to exhibits St. Jude intends to offer), First RFP No. 5, First RFP No. 6, Second RFP No. 1, Second RFP No. 2, Second RFP No. 3, Second RFP No. 4, Second RFP No. 5, Second RFP No. 6, Second RFP No. 7, and Second RFP No. 8 are OVERRULED; it is further—
>
> * * *
>
> ORDERED that St. Jude must search for and produce, to the extent they exist: archived emails responsive to First RFP No. 1, First RFP No. 2, First RFP No. 3, First RFP No. 4, First RFP No. 5, First RFP No. 6, Second RFP No. 1, Second RFP No. 2, Second RFP No. 3, Second RFP No. 4, Second RFP No. 5, Second RFP No. 6, Second RFP No. 7, and Second RFP No. 8 …

6. The requests for production referenced in these decretal paragraphs seek production of email communications as follows:

> **<u>REQUEST NO. 1</u>**
>
> All Documents and Communications between St. Jude and the Debtor which relate to or evidence an agreement between the parties for St. Jude to provide Goods to the Debtor including, specifically, any Document or Communication by which the Debtor agreed to pay for the same.

Exhibit B, p. 9.

> **<u>REQUEST NO. 2</u>**
>
> All Documents and Communications within the one (1) year period prior to the Petition Date that detail shipments of Goods from St. Jude to the Debtor. Include the Good shipped, the prices, the date of shipment, and the date the Debtor ordered the Goods.

*Id.*

> **<u>REQUEST NO. 3</u>**
>
> All Documents and Communications between the Debtor and St. Jude within the one (1) year prior to the Petition Date, including any such Documents and Communications related to or evidencing any payment by the Debtor to St. Jude.

*Id.*

**REQUEST NO. 4**

> All Documents and Communications related to any assertion in the Motion, including all Documents and Communications that St. Jude will offer into evidence at any hearing on the Motion.

*Id.*

**REQUEST NO. 5**

> All Documents and Communications between you and any third party related to any demand for payment, claim submitted, or payment received, by St. Jude against or from such third party, related to, for, or on account of the Debtor's failure to pay for any of the Goods the subject of the Motion, including as may be related to any guarantor, insurer, letter of credit issuer, co-obligor, or indemnitor.

*Id.*

**REQUEST NO. 6**

> All Documents and Communications that support your answers to the Interrogatories not otherwise requested in another Request.

Exhibit B, p. 10.

**REQUEST NO. 3**

> All Communications and Documents between you, on the one hand, and the "Campbell" referred to on your invoice number 9006810804, on the other hand, related to, referring to, or mentioning the Debtor, including any invoice between you and he/she related to any goods or products sold, provided to, consigned, or otherwise transferred to the Debtor or to any patient of the Debtor's.

Exhibit C, p. 4.

**REQUEST NO. 5**

> All Communications and Documents between you, on the one hand, and the "Stamme" referred to on your invoice number 9006810804, on the other hand, related to, referring to, or mentioning the Debtor, including any invoice between you and he/she related to any goods or products sold, provided to, consigned, or otherwise transferred to the Debtor or to any patient of the Debtor's.

Exhibit C, p. 5.

> **REQUEST NO. 7**
>
> All Communications and Documents between you, on the one hand, and the "M Child" referred to on your invoice number 9006810804, on the other hand, related to, referring to, or mentioning the Debtor, including any invoice between you and he/she related to any goods or products sold, provided to, consigned, or otherwise transferred to the Debtor or to any patient of the Debtor's.

*Id.*

7. On July 9, 2018, after the Trustee granted an agreed extension, St. Jude purportedly produced emails responsive to these requests. But much to the Trustee's surprise, St. Jude produced a mere sixteen pages of emails. The Trustee conveyed his disbelief in a letter to St. Jude dated July 10, 2018. A copy of the letter is attached hereto as Exhibit M. The Trustee then asked St. Jude to confirm whether it intended to broaden its search.

8. St. Jude responded in a letter later the same day, a copy of which is attached hereto as Exhibit N. The letter revealed that St. Jude only utilized extremely limited search terms and only searched the emails of a handful of St. Jude employees. In reliance on St. Jude's alleged policy that "St. Jude emails were generally only preserved for 30 days," St. Jude claimed it was "not surprised that there are few responsive emails that we have located to date." Nevertheless, St. Jude asked the Trustee to recommend additional search terms.

9. The Trustee responded by letter dated July 25, 2018, a copy of which is attached hereto as Exhibit O. The letter begins by addressing the Trustee's confusion about St. Jude's alleged document retention policy. For St. Jude to say that emails are not "preserved" is not the same thing as to say they are actively deleted forever from anywhere they might be found. The Trustee therefore requested clarification. The Trustee also suggested additional search parameters, as St. Jude had requested.

10. In addition to the letter, the Trustee served his *Second Set of Interrogatories and Fourth Set of Requests for Production to St. Jude Medical S.C., Inc.* at the same time, a copy of which is attached hereto as Exhibit P. These requests and interrogatories seek the following information and documents:

> **INTERROGATORY NO. 1**
>
> Provide the name, department, title, and business address of the St. Jude employee(s) responsible for drafting, implementing, and enforcing St. Jude's document and e-mail retention policies, and provide a description of each individual's role in such endeavor. This interrogatory seeks to discover the identities and roles of both (a) lay employees responsible for drafting, implementing, and enforcing such policies, as well as (b) employees with technical expertise in the field of information technology who actually draft, implement, and/or enforce such policies as network administrators or in any similar capacity.

Exhibit P, p. 2.

> **REQUEST NO 1.**
>
> Produce copies of all written policies and procedures in place during 2015, 2016, and 2017 governing St. Jude's retention (whether by archiving, backing up, or otherwise) of emails and other documents. To the extent these policies and procedures are contained in documents with other, irrelevant content, the Trustee does no object to St. Jude redacting such other, irrelevant portions.

*Id.*

> **REQUEST NO. 2**
>
> Produce copies of all employee manuals, employee handbooks, and other similar documents from 2015, 2016, and 2017 that inform and/or instruct St. Jude employees regarding how, when, and/or why to store, delete, archive, back-up, or otherwise manage e-mail communications. The Trustee does not object to St. Jude redacting other, irrelevant portions of such documents.

Exhibit P, p. 3.

> **REQUEST NO. 3**
>
> Produce all documents and communications containing, relating to, or providing for a litigation hold regarding Walnut Hill Physicians' Hospital. For purposes of

> this request, a "litigation hold" includes any document or communication provided to agents or employees related to or instructing them to preserve all forms of relevant information when litigation is reasonably anticipated. It may include, for example, a direction to employees instructing them not to delete, but to preserve, all e-mail communications potentially relevant to anticipated, pending, or actual litigation.

*Id.*

11. St. Jude responded to the Trustee's letter on August 3, 2018, a copy of which response is attached hereto as Exhibit Q. While St. Jude ostensibly claimed that it is "willing to discuss appropriate additional searches", it is clear that St. Jude does not intend to comply with the Court's Order. The Trustee proposed entirely reasonable search parameters, and St. Jude both refused to utilize them and declined to propose any alternative.

12. Since that time, the Trustee has repeatedly asked St. Jude for a discovery conference. The Trustee has sought to talk with St. Jude by telephone and in person. After the Trustee's counsel agreed to the extraordinary condition of St. Jude having a court reporter transcribe the conference (no doubt for the purpose of grandstanding before the Court), St. Jude finally agreed to have the discovery conference with the Trustee's counsel on September 4, 2018. Unsurprisingly given St. Jude's repeated failures, nothing came of this 45-minute-long conference.

13. In fact, St. Jude's position presents an interesting paradox. If emails really were not retained and no longer exist, then there is no search that could be too burdensome, because there is nothing to search. St. Jude's argument that the Trustee's search parameters are too broad and unduly burdensome is inconsistent with its allegation that emails were not retained. In any event, the Court has already overruled St. Jude's undue burden objections, and it is not the

Trustee's responsibility to conduct St. Jude's search for it. St. Jude's bad-faith delay tactics are patent.

14. St. Jude's August 3 letter also purported to shed additional light on St. Jude's document retention policy. Exhibit Q, p. 2. This time, instead of saying that emails are not "retained", St. Jude explained that it was acquired by Abbot Laboratories, Inc. ("Abbott") in January 2017. The letter states that Abbot "purges all email located in an employee's Inbox and Sent Items older than 30 days …." *Id.* Again, this is doublespeak. The fact that an email is purged from an Inbox does not necessarily mean that no copy of it exists anywhere. The Trustee still has no idea what exactly St. Jude's email retention policy is, nor whether emails exist to be searched.

15. Interestingly, St. Jude also stated that all backup tapes of its pre-Abbot emails "no longer exist". But as with every statement St. Jude has made about its document retention policy, this statement is equivocal. It could mean that St. Jude intentionally destroyed the backup tapes, or it could mean that they were lost or accidentally damaged. St. Jude's refusal to state clearly the terms of its document retention policy is suspicious to say the least. If emails are actively destroyed such that no copies exist anywhere after only 30 days, then that raises serious questions about spoliation, discussed below.

16. On August 24, 2018, St. Jude responded to the Trustee's *Second Set of Interrogatories and Fourth Set of Requests for Production to St. Jude Medical S.C., Inc.* A copy of the response is attached hereto as Exhibit R. St. Jude made the same objection to each request and refused to provide any documents or information:

> As set out more fully in its Motion for a Protective Order, St. Jude objects to this Interrogatory on the grounds that it seeks information that is not relevant to any claim or defense remaining in this action. It is unduly burdensome to ask St. Jude

> to undertake any further investigation with regard to e-mail communications, as St. Jude fully complied with the Court's prior order, St. Jude has withdrawn all claims and defenses which implicate ordinary course concerns to which such communications could be relevant, and St. Jude has filed a motion for summary judgment which shows, based on undisputed facts, that the amount in controversy, if any, is minimal, such that any further discovery is disproportionate. St. Jude further objects to this Interrogatory on the grounds that it seeks confidential and proprietary documents.

17. Despite St. Jude's assertion, communications are relevant to more than ordinary-course concerns. As discussed in the Motion to Compel, the Trustee has a reasonable basis to believe that the relationship between St. Jude and the Debtor was one of consignment. This is based on information from a former Debtor employee, as well as one of the contracts between the Debtor and St. Jude, which expressly contemplates consignment. The nature of the relationship—whether or not it was consignment—could affect the date new value was provided, and St. Jude's principal defense is based on allegedly providing new value. Indeed, it could negate that affirmative defense if the Trustee is correct that the consignment arrangement granted St. Jude a security interest.

18. Later in the day on August 24, 2018, St. Jude filed a *Motion of St. Jude Medical S.C., Inc. for Partial Summary-Judgment* (Dkt. No. 28, the "MSJ") and a *Motion of St. Jude Medical S.C., Inc. for Protective Order* (Dkt. No. 31, the "MPO"). Given St. Jude's ongoing, bad-faith refusal to cooperate in discovery (among other issues), the MSJ is premature. Nevertheless, the Trustee will file both a substantive response and a motion for continuance under rule 56(d). As for the MPO, it does not excuse St. Jude's failure to comply with this Court's prior order or decision to wholly ignore legitimate discovery.

19. St. Jude claims that the Court should suspend discovery until after it decides the MSJ. But St. Jude either (a) is actively withholding evidence that the Court has already ordered

it to produce; or (b) intentionally destroyed evidence at a time it had a duty to preserve evidence. Either way, it would be inappropriate to proceed with the MSJ at this time, and it would be inequitable to grant the requested protective order.

20. Accordingly, for the reasons discussed below, the Court should sanction St. Jude's bad-faith contempt and other misconduct and order it to produce the documents and answer the interrogatory properly propounded by the Trustee regarding St. Jude's document retention policies. And, while the Court declined to award the Trustee his attorney's fees from the last motion because the Court believed that St. Jude was acting in good faith, the Court should now revisit that finding and award those fees to the Trustee.

## III. ARGUMENT AND AUTHORITIES

### A. ST. JUDE IS IN CONTEMPT OF THE COURT'S PREVIOUS ORDER

21. St. Jude has violated the Order by not searching and producing responsive emails, including archived emails. St. Jude did not conduct a meaningful search or review archived emails. It stands in further contempt because it has used doublespeak to hide the truth regarding whether emails really do or do not exist, indicating that St. Jude simply chose to ignore the Court's Order. St. Jude did admit at the prior hearing, however, that it had archived emails. When asked point blank whether the emails exist, St. Jude has refused to provide an unequivocal written answer. Finally, by utilizing inadequate search criteria and *a priori* ignoring the Trustee's suggestions of additional criteria, St. Jude has not even made a good-faith effort to comply with the Order.

22. All issues concerning the appropriateness of the original discovery and St. Jude's objections thereto were adjudicated in the context of the Order, and St. Jude cannot now attack that Order. To the extent that it was unduly burdensome to de-archive and search emails, St.

Jude was required to expressly respond with that argument and to detail the burdens involved. FED. R. CIV. P. 26(b)(2)(B) (pertaining specifically to electronically stored information). Instead, St. Jude made a generalized undue-burden objection, which this Court expressly overruled. Thus, whatever burden may be involved, it is too late to object, and it in no way excuses St. Jude's contempt.

23. The same is true with respect to St. Jude's new argument that discovery is no longer necessary because St. Jude has withdrawn all "ordinary course" issues. While the Trustee discusses this argument at greater length below, even if the argument has any merit, it does not excuse St. Jude from complying with the Order. St. Jude can no more take unilateral action to relieve itself of its duty to comply with a Court order than another party could moot an order compelling it to act by simply attempting to change the facts. That is what Rule 59 or, in this instance, Rule 60(b), would be for—none of which relief St. Jude has sought.

24. It goes without saying that the Court has the inherent power to enforce its orders, both by monetary sanction (here in the nature of attorney's fees and expenses) and by a further order compelling compliance with the Order. FED. R. CIV. P. 37(b)(1). *See also, e.g.*, *In re Paige*, 365 B.R. 632, 637 (Bankr. N.D. Tex. 2007). The appropriate sanction and remedy here is to award the Trustee his reasonable attorney's fees and expenses incurred throughout this discovery dispute, including previously incurred fees and expenses, and to again order St. Jude to comply fully, without delay, doublespeak, or further objection, with the Order, under pain of further contempt, potentially including death penalty sanctions.

## B. ST. JUDE HAS NOT MOOTED DISCOVERY BY DROPPING ORDINARY COURSE

25. The Trustee anticipates that St. Jude will argue that discovery is no longer relevant because St. Jude has dropped its ordinary course defense, leaving it only with its new

value defense. This is incorrect. First, St. Jude submits a declaration in support of summary judgment from Mr. Genovese, but St. Jude refuses to cooperate in discovery such that the Trustee could test the accuracy of Mr. Genovese's testimony. This applies equally to a second witness whose declaration St. Jude tenders. Second, there is strong evidence of a consignment relationship which may negate the new value affirmative defense in full. Exhibit I, p. 4; *see also* Declaration of Rick Leonard ¶ 7, attached hereto as Exhibit S.

26. The situation is all the more confusing and needing of discovery because St. Jude, at the last hearing, disavowed any consignment and went so far as to suggest that there is no evidence of a consignment.[2] Third, the Trustee has strong information that St. Jude made various deliveries twice, in error, and refused to take back the second shipment. Exhibit S. While the amounts involved would not negate new value in full, the amounts may be significant enough to alter the mathematics. Fourth, St. Jude's summary judgment evidence suggests that St. Jude applied $53,173.11 in credits during the preference period. More information is needed to determine if these offsets are avoidable under section 553(b) of the Bankruptcy Code.

27. That there is a contract providing for consignment is directly relevant to the new value affirmative defense. As the Trustee has previously briefed, there are two kinds of consignments, and it is how the parties treated the arrangement and acted on it that strongly influences which kind is involved, although there is a presumption of a "sale or return" consignment. *See* TEX. BUSS. & COMM. CODE ANN. § 2.326 at cmt. 1. If this is the case here, as

[2] St. Jude also informed the Court that the consignment was never established. Yet there is a signed contract to the contrary. Internal communications, as well as external communications, are necessary to see what was actually done and what was not done, and why, and when. That discovery is also necessary before the principal witnesses are deposed, so that the Trustee can be armed with whatever documents and communications there may be prior to taking such depositions. And, if it really is as simple as St. Jude suggests, then what is there to hide?

the contract and other evidence strongly suggest, then there are two consequences for new value. First, it affects the date that title passed, and therefore when the alleged new value was provided, because title passes when shipped to the Debtor despite a reservation of title in the document. *See* TEX. BUSS. & COMM. CODE ANN. § 2.401(a)-(b); § 9.102(12) § 9.102(73).

28. Second, and perhaps more importantly, the consignment confers on St. Jude an automatic security interest. *See id*. That security interest may or may not have been perfected. In the case of "hand carry," there was perfection by possession because St. Jude's agent only released the goods when used, according to St. Jude's summary judgment evidence (which the Trustee does not necessarily agree with, again having been denied the right to test this evidence). But even if unperfected, the security interest would not have been avoidable until the petition date. Thus, any new value affirmative defense may be completely negated if St. Jude had a security interest, which the contract, the facts, and the U.C.C. strongly suggest it did. *See* 11 U.S.C. § 547(c)(4) (providing as an element that the alleged new value must "not be secured by an otherwise unavoidable security interest").

29. Moreover, as otherwise briefed by the Trustee in response to St. Jude's motion for summary judgment, St. Jude's security interest was automatically perfected for "consumer goods," which would include much of its new value such as pace makers. Discovery is needed on this issue as well. And the Trustee has yet to have a meaningful opportunity to depose Mr. Genovese, because the Trustee needs to obtain Mr. Genovese's communications and internal documents first in order to be able to take a meaningful deposition of him and effectively examine him as to his testimony.

30. Therefore, the basic discovery that the Trustee seeks—including internal communications—is highly relevant to the new value affirmative defense. And, since this is a

defense on which St. Jude bears the burden of proof, it is all the more important that the Trustee have a meaningful opportunity to discover and to test the facts and evidence as represented to be true by St. Jude, especially before the Court considers a summary judgment.

## C. ST. JUDE HAS REFUSED TO FULFILL OTHER DISCOVERY OBLIGATIONS IN BAD FAITH

31. The Trustee served his *Second Set of Interrogatories and Fourth Set of Requests for Production to St. Jude Medical S.C., Inc.* in order to obtain information about St. Jude's document retention policy. This was necessary because St. Jude's explanation of that policy has been consistent only in its equivocation. As discussed above, St. Jude either (a) is actively withholding evidence that the Court already ordered it to produce; or (b) intentionally destroyed evidence at a time it had a duty to preserve evidence. The details of St. Jude's document retention policy are paramount to determining which one is the case, and the Trustee's discovery could not have been more targeted and reasonable.

32. Assuming St. Jude destroyed evidence, then substantial discovery is justified on the topic of spoliation. Rule 37 provides in relevant part as follows:

> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

FED. R. CIV. P. 37(e) (applicable here under FED. R. BANKR. P. 7037).

33. St. Jude claims that it was acquired by Abbott in January 2017 and that Abbott's document retention policy governs. A quick review of the Federal Courts' PACER system reveals that someone sues Abbott nearly every day. Even a search limited to (a) "Abbott Laboratories", (b) as a defendant, (c) in civil cases produces "5400+" results.[3] Were one able to conduct a similar search across all state courts, one would likely find that Abbott is, in fact, sued every single day. If Abbott's (and therefore St. Jude's) policy is to completely destroy emails after only 30 days, it is difficult to imagine a legitimate reason for that policy, especially in light of how often they get sued. And lest the point be lost, St. Jude is in the medical goods and implants business—one that surely has numerous regulatory, insurance, contractual, and common-sense reasons to preserve communications for more than thirty days. St. Jude's alleged policy is simply not credible, and, if true, it would represent the most extreme type of policy that could exist. Rather, as the Trustee strongly suspects, the emails exist on some server, some cloud, or some backup tape. It is just that St. Jude does not wish to comply with the Order.

34. In *Lewy v. Remington Arms Co.*, 836 F.2d 1104, 1111 (8th Cir. 1988), for example, Remington destroyed certain documents pursuant to its three-year record retention policy. The District Court therefore gave the following instruction to the jury: "If a party fails to produce evidence which is under his control and reasonably available to him and not reasonably available to the adverse party, then you may infer that the evidence is unfavorable to the party who could have produced it and did not." *Id.* Remington argued that "destroying records

---

[3] The Trustee requests that the Court take judicial notice of these PACER search results.

TRUSTEE'S (A) MOTION FOR CONTEMPT, FOR SANCTIONS, AND TO COMPEL PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES; AND (B) RESPONSE TO ST. JUDE'S MOTION FOR PROTECTIVE ORDER Page **16** of **20**

pursuant to routine procedures does not provide an inference adverse to the party that destroyed the documents." *Id.*

35. The Eight Circuit disagreed and provided the following analysis of the issue, which is equally applicable here:

> First, the court should determine whether Remington's record retention policy is reasonable considering the facts and circumstances surrounding the relevant documents. For example, the court should determine whether a three year retention policy is reasonable given the particular document. A three year retention policy may be sufficient for documents such as appointment books or telephone messages, but inadequate for documents such as customer complaints. Second, in making this determination the court may also consider whether lawsuits concerning the complaint or related complaints have been filed, the frequency of such complaints, and the magnitude of the complaints.
>
> Finally, the court should determine whether the document retention policy was instituted in bad faith. In cases where a document retention policy is instituted in order to limit damaging evidence available to potential plaintiffs, it may be proper to give an instruction similar to the one requested by the Lewys. Similarly, even if the court finds the policy to be reasonable given the nature of the documents subject to the policy, the court may find that under the particular circumstances certain documents should have been retained notwithstanding the policy. For example, if the corporation knew or should have known that the documents would become material at some point in the future then such documents should have been preserved. Thus, a corporation cannot blindly destroy documents and expect to be shielded by a seemingly innocuous document retention policy.

*Id.* at 1112 (citations omitted).

36. Based on the evidence he obtains in discovery, the Trustee intends to call upon the Court to evaluate the same factors: (a) whether St. Jude's email retention policy is reasonable considering the facts and circumstances surrounding the relevant communications; (b) whether lawsuits concerning the complaint or related complaints have been filed, the frequency of such complaints, and the magnitude of the complaints; and (c) whether the email retention policy was instituted in bad faith. Depending on the analysis, the Trustee may ask the court for a negative inference based on St. Jude's spoliation. At this point, however, additional discovery is needed

first. And even if there is a thirty-day policy past which emails no longer exist, St. Jude should have known of the potential of litigation as soon as the Debtor filed bankruptcy. There should still have been thirty days of communications, which would have been right in the middle of the new value period.

37. The Court should therefore order St. Jude to respond to the Trustee's *Second Set of Interrogatories and Fourth Set of Requests for Production to St. Jude Medical S.C., Inc.* As St. Jude's refusal to comply with this discovery was not reasonably justified, and especially in light of all of the other evidence of bad faith, the Court should award the Trustee his reasonable attorney's fees and expenses in filing this Motion and responding to the MPO.

## D. ST. JUDE HAS FAILED TO MEET ITS BURDEN OF PROOF FOR A PROTECTIVE ORDER

38. "Federal Rule of Civil Procedure 26(b) sets the scope of discovery broadly, allowing parties to obtain discovery regarding 'any nonprivileged matter that is relevant to any party's claim or defense.'" *In re LeBlanc*, 559 Fed. Appx. 389, 392 (5th Cir. 2014) (quoting Fed. R. Civ. P. 26(c)). If a party seeks relief from discovery by way of a protective order, such party bears the burden to show the protective order is necessary. *Id.* This requires "'a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *Id.* (quoting *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998)). Under these liberal rules, the burden on a party resisting discovery is a heavy one. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

39. Here, St. Jude has fallen far short of meeting its heavy burden. St. Jude's position boils down to an argument that the Trustee is not entitled to discover any evidence other than hand-picked documents that allegedly demonstrate a complete defense. According to St. Jude, the Court should suspend all discovery pending a ruling on its premature summary judgment

motion, which is supported by self-serving evidence that St. Jude has denied the Trustee the opportunity to verify. And despite all but admitting to destroying evidence it had a duty to preserve, St. Jude would even seek to deny the Trustee access to information about whether or not such evidence still exists. St. Jude's position in this case is extraordinary, and based on the standards described above, St. Jude has failed to make a particular and specific demonstration of fact to justify the relief it seeks in the MPO.

## IV.    PRAYER

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests that the Court enter an order (i) denying the MPO; (ii) granting this motion; (iii) commanding St. Jude to comply with its previous Order; (iv) holding St. Jude in contempt for refusing to comply with the Court's previous Order; (v) overruling St. Jude's objections and commanding St. Jude to respond to all outstanding discovery requests from the Trustee; (vi) levying appropriate sanctions against St. Jude based on its bad-faith misconduct; and (vii) providing the Trustee such other and further relief to which he is entitled.

RESPECTFULLY SUBMITTED this 14th day of September, 2018.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ *Julian P. Vasek*
Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
Julian P. Vasek, Esq.
Texas Bar No. 24070790
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

**ATTORNEYS FOR SCOTT M. SEIDEL, TRUSTEE**

**CERTIFICATE OF CONFERENCE**

I hereby certify that I conferred with counsel for St. Jude by telephone on September 5, 2018. Despite approximately 45 minutes of discussions, the parties were unable to resolve any of the issues addressed herein.

By: /s/ *Julian P. Vasek*
Julian P. Vasek, Esq.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this the 14th day of September, 2018, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, including on St. Jude through John Johnson, Esq., counsel of record.

By: /s/ *Julian P. Vasek*
Julian P. Vasek, Esq.