# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | | |
|---|---|---|---|
| In re: | ) | Chapter 7 | |
| | ) | | |
| WALNUT HILL PHYSICIANS' HOSPITAL, LLC, | ) ) ) | Bankruptcy: | 17-32255-bjh7 |
| | ) | | |
| Debtor in Liquidation. | ) | | |

| | | | |
|---|---|---|---|
| SCOTT M. SEIDEL, CHAPTER 7 TRUSTEE, | ) ) ) | | |
| Plaintiff, | ) ) | | |
| v. | ) ) | Adversary: | 18-03033-bjh |
| ST. JUDE MEDICAL S.C., INC., | ) ) ) | | |
| Defendant. | ) ) | | |

## RESPONSE BRIEF IN OPPOSITION TO THE TRUSTEE'S MOTION FOR CONTEMPT, FOR SANCTIONS, AND TO COMPEL PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES

JOHN E. JOHNSON, *of Counsel*
State Bar [Tex.] 24025457
**PADFIELD & STOUT, L.L.P.**
705 Ross Avenue
Dallas TX 75202
+1 214 215 6402 – telephone
jjohnson@padfieldstout.com – e-mail

and

SAMUEL C. WISOTZKEY
MELINDA A. BIALZIK
**KOHNER, MANN & KAILAS, S.C.**
Washington Building
Barnabas Business Center
4650 N. Port Washington Rd.
Milwaukee WI 53212-1059
+1 414 962 5110 – telephone
swisotzkey@kmksc.com – e-mail
mbialzik@kmksc.com – e-mail
***Counsel to St. Jude.***

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................2

TABLE OF AUTHORITIES ............................................................................................3

RESPONSE & BRIEF .......................................................................................................3

I. Introduction .....................................................................................................................3

II. Background .................................................................................................................... 6

III. Argument ..................................................................................................................... 8

    A. St. Jude Complied with the Court's Order ................................................................ 8

    B. Removing Issues from a Case Necessarily Moots Discovery Related to Those Issues.. 11

    C. St. Jude Has Acted in Good Faith To Seek Protection from Irrelevant Discovery........ 15

IIII. Conclusion ................................................................................................................. 17

V.  Signature ..................................................................................................................... 18

CERTIFICATE OF SERVICE ........................................................................................19

# TABLE OF AUTHORITIES

*Published Decisions*

*Am. Family Life Assur Co. of Columbus v. Biles,*
714 F.3d 887, 894 (5th Cir. 2013) ...................................................................................... 14

*C.B. Trucking, Inc. v. Waste Mgmt. Inc.,*
137 F.3d 41, 44 (1st Cir. 1988) ........................................................................................... 14

*In re Circuit City Stores, Inc.,*
432 B.R. 225 (Bankr. E.D. Va. 2010) ................................................................................. 12

*McKinney/Pearl Restaurant Partners, L.P. v. Metropolitan Life Ins. Co.,*
322 F.R.D. 235, 241-44 (N.D. Tex. 2016) ............................................................... 9, 15 - 16

*SEC v. Spence & Green Chem. Co.,*
612 F.2d 896, 901 (5th Cir. 1980) ...................................................................................... 13

*Washington v. Allstate Ins. Co.,*
901 F.2d 1281, 1285 (5th Cir. 1990) .................................................................................. 14

*Title 11 Statues: United States Code*

Section 503(b)(9) ......................................................................................................... 12 - 13

Section 547 ............................................................................................................................ 15

Section 553(b) ....................................................................................................................... 15

*Federal Rules of Civil Procedure*
*(as adopted by the Federal Rules of Bankruptcy Procedure)*

Rule 26(b)(1) ........................................................................................................... 12, 15, 18

Rule 26(g) ....................................................................................................................... 15, 16

Rule 37(e) ............................................................................................................................... 16

Rule 56(d) .............................................................................................................................. 13

Rule 59 .................................................................................................................................... 10

Rule 60 .................................................................................................................................... 10

*Statutes of the State of Texas*

Tex. Bus. Comm. Code Ann., generally ..................................................................... 13, 15

**RESPONSE & BRIEF**

**TO THE HONORABLE JUDGE OF THE
UNITED STATES BANKRUPTCY COURT:**

NOW COMES *St. Jude Medical S.C., Inc.* ("St. Jude" or "Defendant"), Defendant herein, and files this *Response Brief in Opposition* to the *Trustee's Motion for Contempt, for Sanctions, and to Compel Production of Documents and Answers to Interrogatories* ("Motion for Contempt") [adv. docket 41"][1] filed by *Scott Seidel, Chapter 7 Trustee* ("Trustee" or "Plaintiff"), Plaintiff herein, and in support[2] of the same publishes the following:

## I. Introduction

1.  On May 24, 2018, the Trustee moved to compel St. Jude as to discovery-reponses and production via its *Motion to Compel Discovery Responses and Production* [adv. docket 9] ("May Compel Motion"). Contrary to the Trustee's current Motion for Contempt, St. Jude fully complied with the Court's prior discovery findings at the hearing and the Courts' subsequently-entered *Order Granting in Part and Denying in Part Trustee's Motion to Compel Discovery Responses and Production* ("Compel Order"). During argument on the May Compel Motion (at the June 21 Hearing),[3] the Trustee focused on issues of (a) potential consignment and (b) ordinary course of business issues (i) in this Case and the (ii) then-pending request by St. Jude for an administrative priority claim. St. Jude believed at that point that the discovery was irrelevant because the focus of its preference defense was (and always has been) the subsequent new value defense – and that documents evidencing delivery of new value and a clear mathematical analysis would and will provide resolution of the Trustee's preference action.[4] But, as the Court noted during argument on the May Compel Motion, St. Jude had not yet formally narrowed the issues or brought the merits of its new value defense before the Court. The Trustee directly pointed to

---

[1] Docket numbers for the underlying Voluntary Petition in bankruptcy are referenced as [docket __]; docket numbers for the Adversary Proceeding *sub judice* are referenced as [adv. docket __].
[2] References to the Appendix to this Response are referred to herein as "St.JudeResponse ContemptApp'x.__ [referenced document, any Exhibit &c.]."
[3] The hearing transcript for the June 21 Hearing is referred to herein as "June 21 Transcript __:__."
[4] *See, e.g.*, St. Jude's Response to the Trustee's Motion to Compel [adv. docket 14].

the course of action St. Jude should take, when his lawyer wrote in his *TRUSTEE'S REPLY IN SUPPORT OF HIS MOTION TO COMPEL DISCOVERY REPSONSES AND PRODUCTION* [adv. docket 20] to the May Compel Motion: "If St. Jude is right legally, where is its MSJ and its motion to abate discovery?  If St. Jude is right about ordinary course, why has it not withdrawn the 503(b)(9) Application or its affirmative defense." Motion to Compel Reply, at p. 2.

2.      Directly after compliance with the Compel Order, St. Jude took the Trustee's recommended action. Via its *FIRST-AMENDED ANSWER* [adv. docket 38], and its *NOTICE OF WITHDRAWAL* [docket 389], St. Jude withdrew its administrative expense priority claim and its ordinary course affirmative defense – eliminating ordinary course of business issues from the case.  St. Jude also articulated the power of its defenses via its *MOTION FOR PARTIAL SUMMARY JUDGMENT*; *BRIEF*; and *APPENDIX* [adv. dockets 28, 29, 30], and its *MOTION FOR PROTECTIVE ORDER*; *BRIEF*; and *APPENDIX*[5] [adv. dockets 31, 32, 33].  But rather than focusing in on narrow, substantive issues remaining, the Trustee continues to crusade for irrelevant discovery, and accuse St. Jude of bad faith (for doing exactly what the Trustee suggested).  But, as the logic and authorities cited in St. Jude's summary-judgment briefing reveal, Plaintiff has no more factual issues that merit additional discovery – only matters of law remain.  The Trustee's Motion for Contempt, while imposingly-captioned, is baseless, only hoping to distract from the merits of St. Jude's dispositive motion.

3.      Once the Court reviews the legal issues raised on summary judgment, St. Jude has full confidence that the Court will agree that no factual issues remain and judgment will be granted, either granting a take-nothing judgment on Trustee's preference claim or otherwise entering judgment in an amount mathematical calculations determine.  Accordingly, the Trustee's motions regarding discovery should be treated for what they are and denied.

---

[5]    This Appendix (St. Jude Appx. in Support of Protective Order [adv. docket 33]) is referred to by its bates-numbers "DefProtOrderApp'x.___."

## II. Background

4.     Much of the background relating to the Trustee's current motion is addressed in St. Jude's *MOTION FOR PROTECTIVE ORDER, BRIEF*, and *APPENDIX* [adv. dockets 31, 32, 33], which is incorporated herein along with that *REPLY BRIEF IN SUPPORT OF PROTECTIVE ORDER* [adv. docket 54]. Basically, at the June 21 Hearing, the Trustee clarified and limited that discovery he sought,[6] and in light of those representations, the Court ultimately ordered St. Jude to search for narrow categories of documents – namely: (a) e-mails between the parties contained in St. Jude's archives (to the extent they existed) going back sixteen months; and (b) agreements and correspondence between St. Jude and identified salespeople "directing how an identified sales person delivers or releases goods" to Walnut Hill. St.JudeResponseContemptApp'x.023-.024 [June 21 Transcript 23:25 - 24:5].

5.     In compliance with the Compel Order, St. Jude: (a) searched for e-mail records of seven employees (including the four sales-people identified by the Trustee); (b) amended its discovery responses on July, 5, 2018; and (c) produced the limited responsive e-mails it located on July 9, 2018. *See* St.JudeResponseContemptApp'x.041 [Wisotzkey Decl. ¶ 5]. On July 10, 2018, the parties exchanged correspondence. The Trustee was surprised that St. Jude produced only sixteen pages of e-mails, and indicated there must be more based on its own search results. *See* DefProtOrderApp'x.003 [Bialzik Aff'd Ex. A]. St. Jude responded that same day (the June 10 KMK Letter), confirmed its good faith in the search for archived e-mails, and described the reasonable searches it had run and the reasons why voluminous responsive e-mails were not available. *See* DefProtOrderApp'x.004-.005 [Bialzik Aff'd Ex. B (July 10 KMK Letter)]. St. Jude also offered to work with the Trustee to develop additional reasonable searches, while at the same time still pointing out that only limited responsive e-mails might be found. *See id.*

---

[6]     The discovery argued over via the Motion to Compel includes Plaintiff's *First Requests for Production* and *Second Requests for Production* [see adv. docket 10, app'x tabs B, C] and St. Jude's subsequent *Responses and Objections* [see adv. docket 10, app'x tab D] thereto.

6. The Trustee did not immediately respond to the July 10 KMK Letter. Notably, there was no prompt response suggesting that St. Jude has somehow failed to adhere to the Court's Compel Order. *See* St.JudeResponseContemptApp'x.041-.042 [Wizotzkey Dec'l ¶ 6-8].

7. Instead, after two weeks, on July 25, 2018, the Trustee responded with a lengthy and aggressive letter (July 25 Munsch Letter) that ignored the dialogue of the June 21 Hearing and grossly expanded the scope of what he felt St. Jude needed to search, **and** served new discovery requests. *See* DefProtOrderApp'x.006.-010 [Bialzik Aff'd Ex. C (July 25 Munsch Letter)]. In the "spirit" of a collaborative process, the Trustee demanded a new process of searching for communications. Among the Trustee's new demands, the Trustee insisted that St. Jude had to: (a) search the e-mails of forty-one employees; (b) expand the relevant time period to almost four years; (c) use twenty-two additional search terms; (d) review internal e-mails between St. Jude's employees and agents to answer the Trustee's questions; (e) search any paper records; and (f) ask individual employees who may have had responsive e-mails whether they saved or stored any e-mails or other documentation of their communications, including their personal e-mails. *See id*. The Trustee's final proposal was a second set of interrogatories and fourth set of requests for production seeking information and documents related to St. Jude's email retention policies and litigation hold directives, which the Trustee claims "are narrowly tailored to address the Trustee's concerns and confusion about St. Jude's document and e-mail retention policies." *Id*. The Trustee requested a response to his letter by August 3, 2018. *See id*.

8. St. Jude responded (August 3 KMK Letter) to the July 25 Munsch Letter on August 3, 2018, as directed. *See* DefProtOrderApp'x.011.-013 [Bialzik Aff'd Ex. D (August 3 KMK Letter)]. St. Jude again reiterated its good faith in complying with the Court's Order, further explained the lengths it went to in its search for responsive documents and why the Trustee's new demands were inconsistent not only with the Court's prior order, but also the scope of the searches the Trustee acknowledged, **on the record**, would be sufficient at the hearing on the May Compel Motion in

June. St. Jude cited extensively to the transcript of the June 21 Hearing to support its contentions. *See* St.JudeResponseContemptApp'x.041-.042 [Wizotzkey Dec'l ¶ 9].

9. Again, the Trustee did not promptly respond to St. Jude's letter. *See id.* [at ¶ 11]. Contrary to the claims in the Motion for Sanctions, the Trustee did not take any prompt steps to continue discussing the issues; rather, the Trustee only took further steps to "conciliate" after August 23, 2018, when counsel for St. Jude contacted counsel for the Trustee to advise that St. Jude intended to file a motion to amend its pleadings, withdrawing both its administrative expense priority claim and its ordinary course defense to the preference action, a motion for summary judgment on the narrow remaining issue of its new value defense, and seek a protective order from further discovery. *See id.* [at ¶ 11].

10. Remarkably, it was only on September 4, 2018 – more than a month after the August 3 KMK Letter – that the Trustee asked St. Jude to provide St. Jude's purchased copy of the transcript of the June 21 Hearing, which St. Jude provided hours later. *See* St.JudeResponseContemptApp'x.043-.095 [Wizotzkey Dec'l ¶ 12]. It appears, then, that the Trustee did not even reasonably consider St. Jude's contentions in the August 3 KMK Letter for over a month.

11. This timeline, and the other factors noted below, reveals the Motion for Contempt as nothing more than a strategic rhetorical response to St. Jude's Motion for Partial Summary Judgment. However, as reflected below and in St. Jude's other filings in connection with the Motion for Summary Judgment and the Motion for Protective Order, further costly discovery is unnecessary and irrelevant. The Motion for Contempt should be denied in all respects.

### III. Argument

#### A. St. Jude Complied with the Court's Order.

12. As set out above, St. Jude searched for and produced documents in compliance with the Court's Compel Order. The Trustee's complaints about the produced documentation are, in fact, efforts to grossly expand the scope of discovery it seeks and that ordered by the Court in the

Compel Order. The Trustee, in his Motion for Contempt [¶ 8] complains that St. Jude searched only "a handful of St. Jude employee," while ignoring his co-counsel's statement on the record at the June 21 Hearing that the Trustee was asking that St. Jude search for e-mails of "five or ten employees." *See* St.JudeResponseContemptApp'x.023 [June 21 Transcript 23:5 - 7]. Trustee's counsel also confirmed he was asking St. Jude to "go target certain people's e-mails and run certain word searches like Walnut Hill or Rick Leonard (phonetic) or something like that. And if there's nothing that they can tell us that after a reasonable search they found nothing, no problem." *See* St.JudeResponseContemptApp'x.021 [June 21 Transcript 21:7 - 10].

13. St. Jude did exactly what the Trustee requested, and has searched the e-mails of 10 employees[7], including the sales people identified by the Trustee and the individuals in the credit department likely to have had communications with Walnut Hill, using the search terms "Walnut Hill" and "Rick Leonard," among others. *See* DefProtOrderApp'x.004-.005 [Bialzik Aff'd Ex. B (July 10 KMK Letter)]; *see also* St.JudeResponseContemptApp'x.0.41 [Wizotzkey Dec'l ¶ 4]. However, whereas the Trustee indicated if those searches did not result in further significant production it would be "no problem," the Trustee now vexingly seeks contempt.

14. The Trustee's contentions in the July 25 Munsch Letter and in the Motion for Contempt are inconsistent with his on-the-record statements captured in the June 21 Transcript and the Compel Order and they are patently unreasonable given the matters at issue in the case. *See McKinney/Pearl Restaurant Partners, L.P. v. Metropolitan Life Ins. Co.*, 322 F.R.D. 235, 241-44 (N.D. Tex. 2016). The Trustee demands that St. Jude search the e-mails of forty-one employees, with no explanation of why he believes any of these employees would have had relevant communications, and the Trustee demanded St. Jude use twenty-one additional search terms. *See* DefProtOrderApp'x.007-.009 [Bialzik Aff'd Ex. C (July 25 Munsch Letter)].

---

[7] St. Jude originally searched seven employee e-mail accounts, which were the individuals St. Jude reasonably believed might have had relevant communications with Walnut Hill. St. Jude then offered to, and did search, an additional three accounts in an effort to conciliate. *See* St.JudeResponseContemptApp'x.42 [Wisotzkey Decl. ¶ 10].

15.     Both of these demands are inconsistent with the Trustee's statements on the record at the June 21 Hearing. *Cf. Id. with* St.JudeResponseContemptApp'x.021 [June 21 Transcript 21:7 - 10]; .023 [June 21 Transcript 23:5 - 7]. The Trustee also demanded St. Jude search for communications in paper files, ignoring the express limitation in the Court's Compel Order to search for archived e-mails, and demanded searches for internal communications, ignoring that the document requests sought communications between the parties, which was confirmed by the Trustee's counsel's representation that the discovery sought "are targeted requests for Mr. Genovese's communications and contracts, the other sales person's communications and contracts, and communications and contracts going back and forth with the debtor." St.JudeResponseContemptApp'x.013 [June 21 Transcript 13:12 - 16].[8]

16.     The representations and concessions made on the record by counsel for the Trustee at the June 21 Hearing are important and relevant to understand the scope of what was ordered by the Court at the June 21 Hearing. The fact that the Trustee did not even seek to review the transcript of the June 21 Hearing for over a month after St. Jude raised, on August 3, 2018, the parameters laid out by the Court on the record within the June 21 Hearing is telling.

17.     In short, there is no reasonable basis for the Trustee to seek an order for contempt or for sanctions. St. Jude complied with the Court's Compel Order. The Trustee then expanded the scope of discovery sought, and St. Jude brought a motion for a protective order seeking relief from that and other new discovery served by the Trustee.[9] St. Jude has acted in good faith at all times,

---

[8]     The Court must keep in mind that even before the Trustee filed his May 24, 2018 Motion to Compel, St. Jude had produced over 1,200 pages of documents to the Trustee, including all invoices, proofs of delivery and agreements, including all of the invoices and documents relevant to St. Jude's motion for summary judgment.

[9]     Regardless of whether St. Jude sought relief from prior, but now irrelevant, or new discovery, it's motion for a protective order was the appropriate procedure. The Trustee argues that, rather than seeking a protective order, St. Jude should have brought a motion under Rule 59 or Rule 60(b). *See* FED. R. BANKR. P. 9023, 9024 (adopting FED. R. CIV. P. 59, 60). Rule 59 provides a process for seeking a new trial or amending a judgment. *See* FED. R. BANKR. P. 9023 (adopting FED. R. CIV. P. 59). Rule 60(b) provides a process for seeking relief from a "*Final* Judgment, Order or Proceeding." *See* FED. R. BANKR. P. 9024 (adopting FED. R. CIV. P. 60) (emphasis added). Both of these rules, contained in in Title VII "JUDGMENT," apply only to final, dispositive judgments or orders, not to discovery orders. *See* FED. R. BANKR. P. 9024 (adopting FED. R. CIV. P. 60 cmte. note): "The addition of the qualifying word "final" emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the

both in complying with the Court's order and in its motion to get protection from having to respond to irrelevant discovery requests.

### B. Removing Issues from a Case Necessarily Moots Discovery Related to Those Issues.

18. The Trustee focused his May Compel Motion almost entirely on his need for discovery related to ordinary course and consignment issues, both with regards to St. Jude's affirmative defense to the Trustee's preference claim and to St. Jude's section 503(b)(9) claim. As explained most succinctly in the Trustee's May 16, 2018 letter:

> [T]he Trustee has a reasonable factual basis to believe that St. Jude's products were delivered to the Debtor on consignment. As we understand it, whenever a patient needed one of St. Jude's implants, her physician would obtain the implant from a consigned inventory, which St. Jude delivered at an earlier date. The Debtor was then obligated to restock the inventory. This theory is based on information from the Debtor's employee in charge of purchasing, and we believe the contract St. Jude already produced supports it. If we are correct, then the nature of consignment calls into question the appropriate date to consider when determining if St. Jude provided subsequent or contemporaneous new value to the Debtor. Under certain circumstances, title to consigned goods passes upon delivery rather upon sale. You seem to have disagreed, and you suggested that perhaps the parties varied the terms of the contract by their actions or otherwise.
>
> Moreover, St. Jude has asserted ordinary-course defenses, which are highly factual. Thus, communications and documents related to these salespeople, and what their understanding or actions may have been, are highly relevant. The Trustee intends to depose these individuals as well, and he needs relevant, responsive documents prior to doing so. However, at this time, the Trustee does not even know if these individuals are employees or agents of St. Jude, or contractors, or unrelated persons, as St. Jude has refused to provide any information regarding the same.
>
> I understand you disagree with our theory of the case, but the Trustee is entitled to discovery of documents and information that has any potential to prove or disprove his theory.

---

rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires."

Trustee's Appendix Ex. F., p. 6 [Vasek May 16, 2018 letter].

19.    As the Court well knows, ordinary course is no longer at issue in this case because St. Jude has formally withdrawn its ordinary course defense and its 503(b)(9) claim.  *See, e.g., FIRST-AMENDED ANSWER* [adv. docket 38], and its *NOTICE OF WITHDRAWAL* [docket 389].  Under the procedural rules, discovery sought must be "relevant to any party's claim or defense."  *See* FED. R.BANKR. P. 7026 (adopting FED. R. CIV. P. 26(b)).  Discovery aimed at ordinary course issues is necessarily irrelevant because of the withdrawal of the "claim" and "defense" to which ordinary course relates.  *See id.*  The Trustee cannot credibly argue that removal of those issues does not narrow the scope of relevant discovery.

20.    However, instead of acknowledging the changed circumstances, the Trustee continues to argue that **all** discovery is still relevant because of: (a) his speculation that there may have been a consignment inventory; (b) a duplicate shipment; and (c) some question regarding application of credits by St. Jude.  And he maintains these arguments despite the fact that during the parties' conciliation call on September 5, 2018, the Trustee's counsel acknowledged "***I know we're now down to the principal issue being consignment based on the withdraw* [sic] *of the ordinary course defense, but, you know, I don't know if their* [sic] *internal email's discussing a consignment relationship.***" St.JudeResponseContemptApp'x.057 [Wisotzkey Decl., Ex. B, p. 4:16-20] (emphasis added).

21.    As for the Trustee's consignment theory, St. Jude has amply addressed this issue in its briefing on summary-judgment — in short, St. Jude agrees that the delivery date is relevant, and determinative.  But the consignment issue is a red herring, because there is no genuine dispute, or even a suggestion by the Trustee, that St. Jude's new value is based upon goods delivered months, weeks or even days before and maintained in a consigned inventory.  St. Jude has provided relevant delivery documents to refute any such suggestion and has made it clear that its defense is based upon the dates the goods were actually delivered.  *Cf. In re Circuit City Stores, Inc.*, 432 B.R. 225 (Bankr. E.D. Va. 2010) (disallowing a section 503(b)(9) claim of a consignment

creditor where it was stipulated that the goods had been received by the debtor outside of the 20-day period, even if they were ultimately sold by the debtor to its customers within the 20-day period).

22. The Trustee's only other consignment related argument—that St. Jude might have had a perfected security interest in alleged consigned "consumer goods" has also been shown to be legally unsupportable, if not outright frivolous. The Trustee's legal theory, in his *RESPONSE BRIEF* [adv. docket 48, p. 17] to St. Jude's Summary-Judgment Motion speculates that St. Jude held a **perfected** security interest in **consumer goods**.[10] But as explained in St. Jude's *REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT* [adv. docket 51, pp. 7 – 14], the Texas Business & Commerce Code confirms that the goods St. Jude sold to Walnut Hill are not consumer goods in the hands of Walnut Hill, and so St. Jude could not have had a perfected security interest. Assuming the Trustee did not know the Texas statute defining consumer goods at the time he brought this Motion for Contempt and opposed summary judgment, and that he made his consignment arguments in good faith at that time, St. Jude has now put in the record the Official Comments to the Texas Business & Commerce Code (and other relevant provisions) that refute the Trustee's consignment theories, so the Trustee simply has no reasonable, non-injurious basis for any further pursuit of discovery related to an alleged consignment inventory.[11]

---

[10]  Although not part of his summary judgment argument, the Trustee argues in these motions that even an unperfected security interest "would not have been avoidable until the petition date." This frivolous argument is at odds with the notion that avoidability would only be relevant after the petition was filed. A security interest is only avoidable through a bankruptcy proceeding, so all security interests could be described as "unavoidable" before the debtor avails itself of the powers of the bankruptcy court.

[11]  In addition to the current Motion for Contempt that argues that the Trustee should be permitted additional discovery, the Trustee opposed summary judgment with a Rule 56(d) affidavit, similarly arguing that additional discovery is needed on consignment and other issues before summary judgment should be decided—the same issues he contends are the subjects of his Motion for Contempt here. Bu with no reasonable, articulated ground to believe that additional relevant facts exist, and more importantly no legal theory which would make them relevant, he fails to meet his burden for relief under Rule 56(d) or to justify further discovery under the current Motion for Contempt:

> [N]on-moving parties requesting Rule 56(d) relief "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Id.* (quoting *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir.1980)). Instead, the non-moving party must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time

23. Finally, despite the scant basis for a consignment argument in the first place, St. Jude searched for e-mail records of the employees who likely would have had any communications regarding inventory, consignment or otherwise.[12] Other than one agreement, which St. Jude has adequately explained, no other records (or e-mails) relating to an actual consignment have been discovered by either St. Jude or, presumably, the Trustee.[13] And, in any event, as shown in the summary judgment motion-practice, it is now clear that the Trustee does not have a colorable argument that makes consignment relevant to St. Jude's new value defense, the only issue remaining in this case.

24. Simply put, since its May 23 letter to the Trustee's, St. Jude has repeatedly and consistently refuted the existence or relevance of consignment inventory, and focused on the timing of the delivery of goods. *See* Motion for Contempt Appendix Ex. G. [May 16, 2018 Munsch Letter]. St. Jude repeatedly and consistently asked the Trustee to articulate both the factual basis for his belief that a consignment inventory existed and his legal theory on why a potential consignment inventory is relevant. *See id.* St. Jude sought to evaluate the merits of the Trustee's arguments, both for ultimate resolution of the case and to determine if any discovery sought was actually relevant to St. Jude's new value defense. And when the Trustee finally did articulate why and how

---

frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id.* (quoting *C.B. Trucking, Inc. v. Waste Mgmt. Inc.*, 137 F.3d 41, 44 (1st Cir.1998)); *see also Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir.1990) ("This court has long recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment." (citations omitted)).

*Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013)

[12] And the Trustee has the e-mails of the Walnut Hill individual most likely to have any communications regarding inventory and consignment — Mr. Leonard—the person "in charge" of purchases from St. Jude, but the Trustee has not come forth with any such e-mails, even though he has, and has searched, these e-mails. *See* St.JudeResponseContemptApp'x.022-.023 [June 21 Transcript 22:24-25, 23:1-2].

[13] The Trustee's continual claims of lack of resources or access to information are belied by his admission that he has all of Rick Leonard's e-mails, the fact that Mr. Leonard provided a declaration in connection with the Motion for Contempt, and the fact that the Trustee sought to and may have deposed the Debtor's CFO for information relating to, among other things, preference matters. *See* EXPEDITED MOTION FOR RULE 2004 EXAMINATION OF AMERICA TARECTECAN [docket 296] and ORDER GRANTING TRUSTEE'S MOTION FOR 2004 EXAM OF AMERICA TARECTECAN [docket 301].

consignment might relate to St. Jude's new value defense, in his summary judgment response, that response reveals that, not only is there no factual basis for the Trustee's position, but even if a consignment inventory existed, it would not affect the validity of St. Jude's new value defense.[14]

25.  Further, as set out in St. Jude's Summary Judgment Reply Brief [adv. docket 51] and its Reply Brief [adv. docket 54] for its Motion for Protective Order, there are no factual issues regarding the duplicate shipment. St. Jude does not dispute it happened, there is simply a legal question as to whether the fact that it was a duplicate order affects its characterization as new value. As for the credit issue, raised here for the first time, the Trustee asserts that certain credits on the Debtor's account might constitute avoidable preferences under section 553(b), but they have no relevance to the preferences the Trustee has sought to avoid in this action under section 547.[15] Moreover, the Trustee makes no effort to relate the credits to any specific new value invoices relied upon by St. Jude, which further confirms they are irrelevant to the pending action.

**C. St. Jude Has Acted in Good Faith To Seek Protection from Irrelevant Discovery.**

26.  A party seeking to prevail on a motion to compel or resist a motion for protective order needs to demonstrate that the discovery sought satisfies many or all of the proportionality factors, including "the importance of the issues at stake in the action" and "the amount in controversy." *McKinney/Pearl Rest. Partners, L.P.*, 322 F.R.D. at 243 (N.D. Tex. 2016).

> And the party seeking discovery is required to comply with Rule 26(b)(1)'s proportionality limits on discovery requests; is subject to Rule 26(g)(1)'s requirement to certify "that to the best of the person's knowledge, information, and belief formed after a reasonable

---

[14] Incredibly, as of the parties September 5, 2018 discovery conciliation call, the Trustee had not even researched his perfection theory as it relates to consignment:
> Mr. Vasek: I don't think there is a UCC financing statement, but I need to research whether this kind of automatically—
> Ms. Bialzik: What about perfection? So none of this - then we're not perfected. I don't understand what the point of the conversation is.
> Mr. Vasek: Well, I think that warrants further research investigation. I don't know that it has to be perfected in that manner. It's perfected by possession.

St.JudeResponseContemptApp'x.057 [Wisotzkey Decl., Ex. B, p. 13:23-14:6].

[15]    Such credits appear to be applied to items on the Walnut Hill account in the nature of recoupment, rather than any avoidable setoff. *See* 11 U.S.C. § 553(b). St. Jude naturally reserves all rights and defenses should the Trustee actually seek to avoid the same.

inquiry:...(B) with respect to a discovery request..., it is: (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action"; and faces Rule 26(g)(3) sanctions "[i]f a certification violates this rule without substantial justification."

*Id.* (citations omitted)

27.     Since the June 21 Compel Hearing, the Trustee has been continually expanding the scope of discovery he seeks. He began seeking "targeted requests for Mr. Genovese's communications and contracts, the other sales person's communications and contracts, and communications and contracts going back and forth with the debtor," which could be responded to with "but a little bit of attorney time" to search e-mails of "five or ten employees" with a few limited search terms. St.JudeResponseContemptApp'x.013 [June 21 Hearing 13:12-16]. The Trustee's co-counsel then demanded searches of forty-one additional employee email accounts, with 23 new search terms, going back years, and including internal communications. *See* DefProtOrderApp'x.007-.009 [Bialzik Aff'd Ex. C (July 25 Munsch Letter)]. He then demanded broad, and proprietary, information regarding St. Jude's e-mail retention policies.[16] He now suggests that he will seek discovery on other lawsuits St. Jude has been a party to and St. Jude's internal policy reasons for its document retention and destruction policies. *See* Motion for Contempt, p. 16-17.[17]  All for a

---

[16]     *See* Trustee's Second Set of Interrogatories and Fourth Set of Requests for Production to St. Jude Medical S.C., Inc.

[17]     In addition to the fact that the underlying discovery sought is irrelevant, the Trustee's requests for information regarding St. Jude's document retention policies is unfounded. *See* FED. R. BANKR. P. 7037 (adopting FED. R. CIV. P. 37(e)) (permits inquiry into the circumstances of lost or destroyed electronic information only when such information "cannot be restored ***or replaced*** through additional discovery.") There is no question that the Trustee preserved and has access to all email communications between the parties that were in Walnut Hill's possession at the time it filed for bankruptcy. Even if there was a credible argument that email communications between the parties are relevant to remaining new value issues (there is not), and even if the Trustee had a credible argument that St. Jude failed to "take reasonable steps" to preserve electronic information in anticipation of litigation (he does not), the Trustee could not seek a remedy from the Court under Rule 37 because he can replace any lost e-mails between the parties by searching Walnut Hill's records, and in fact has already de-archived and searched e-mails between the key players for both St. Jude and Walnut Hill. As for internal St. Jude e-mails, the Trustee has not suggested any credible argument how such e-mails would have any impact on the controlling new value issues upon which this case will be resolved.

case that can be resolved with the resolution of legal issues raised by undisputed facts showing delivery of goods to Walnut Hill following certain preferential payments. And all in a case where even if the Trustee's consignment theories were correct (they are not), his consignment arguments were relevant to new value invoices totaling at most $22,000. *See* Reply in Support of Summary Judgment [ adv. docket. 51] ¶ 6.

28.	St. Jude's decisions to object to the additional discovery and seek a protective order from the Court were justified and done in good faith. St. Jude has endeavored throughout this case focus on the merits of the parties' claims and litigate in good faith. It has voluntarily withdrawn claims and defenses in an effort to avoid unnecessary litigation and expense. In fact, it did exactly what the Trustee suggested and brought "its MSJ and its motion to abate discovery." Compel Reply [adv. docket 20], at p. 2. Simply put, further discovery is not necessary to resolve the remaining issues in this case, and the Court should rule on summary judgment.

### IIII. Conclusion[18]

29.	St. Jude complied with its discovery obligations and with this Court's Compel Order. While substantial, responsive e-mail records were not located, that does not change the fact that St. Jude conducted the searches the Trustee conceded were reasonable and sufficient at the June 21 Hearing. Now, however, faced with St. Jude's motion for summary judgment, the Trustee is singing a different tune, trying to prolong this case and impose further expense on both sides, even though the only remaining issues are legal issues to be resolved by the Court. The additional discovery sought does not comply with the procedural-rules, as the information sought is irrelevant to any claim or defense and not proportionate the issues and amounts at stake, and appears to be sought for the improper purposes of harassment, unnecessary delay, and needlessly increasing the cost of this litigation. *See* FED. R. BANKR. P. 7026 (adopting FED. R. CIV. P. 26(b)(1)). The Trustee's Motions for Contempt, Sanctions and to compel should be denied.

---

[18]	The Motion for Contempt also included a Response to St. Jude's Motion for Protective Order. St. Jude previously filed its Reply in Support [adv. docket 54] of its Motion for Protective Order.

## V. Signature

49. REMEMBERED and GIVEN UNDER MY HAND this the ___5th___ day of the month of October, *an. Dom.* 2018.

                                                    **PADFIELD & STOUT, L.L.P.**

*/s/ John E. Johnson*

JOHN E. JOHNSON, *of Counsel*
State Bar [Tex.] 24025457
Dallas Office:
705 Ross Avenue
Dallas TX 75202
+1 214 215 6402 – telephone
jjohnson@padfieldstout.com – e-mail

law-counsel for Defendant and
local trial counsel for

**KOHNER, MANN & KAILAS, S.C.**
attorneys for St. Jude Medical S.C., Inc.
a/k/a St. Jude Medical, Inc.
SAMUEL C. WISOTZKEY
(adm. *pro hac vice*)
MELINDA A. BIALZIK
(adm. *pro hac vice*)

Washington Building, Second Floor
Barnabas Business Center
4650 N. Port Washington Rd.
Milwaukee WI 53212-1059
+1 414 962 5110 – telephone
+1 414 962 8725 – telecopy
swisotzkey@kmksc.com — e-mail
mbialzik@kmksc.com – e-mail

## **CERTIFICATE OF SERVICE**

      The undersigned converted the foregoing document into an electronic image, via portable document format (.pdf), electronically submitted same to the Internet web portal for the Clerk of this Court utilizing the Electronic Management and Electronic Case Filing system of the Court, which has caused service, via Simple Mail Transfer Protocol (e-mail), of a Notice of Electronic Filing of this imaged document to the below-identified parties on Friday, October 5, 2018; said e-mail provides an attributable hyperlink to the document, in portable document format, except any non-electronic served counsel; in that instance, such document was mailed via First Class United States Mail, to-wit:

Davor Rukavina, Esq.
Julian Vasek, Esq.
MUNSCH HARDT KOPF & HARR, P.C.
Suite 3800, Ross Tower
500 N. Akard Street
Dallas TX 75201

                                                  /s/ *John E. Johnson.*
                                                  JOHN E. JOHNSON.