**Transcription of a Telephone Call – September 5, 2018**

| | |
|---|---|
| 10:29 1 | front of the Court, that's our position and we think |
| 10:29 2 | it's -- you know, we think that we're absolutely acting |
| 10:29 3 | in good faith under the Rules and complying with the |
| 10:29 4 | Rules and that the Court needs to address the merits. |
| 10:30 5 | The merits need to get resolved. It's in front of the |
| 10:30 6 | Court. |
| 10:30 7 | MR. VASEK: Okay. Well, so you're not going to |
| 10:30 8 | undertake the search we suggested and you're not going |
| 10:30 9 | to conduct any other search, it sounds like. |
| 10:30 10 | MS. BIALZIK: As I said, if you can articulate |
| 10:30 11 | specific individuals -- |
| 10:30 12 | MR. VASEK: I don't have to -- we've |
| 10:30 13 | articulated these people. These people had |
| 10:30 14 | communications with the debtor. I don't know what they |
| 10:30 15 | might've talked about. I don't know what they might've |
| 10:30 16 | talked about amongst themselves, but we're entitled to |
| 10:30 17 | see that. |
| 10:30 18 | MS. BIALZIK: Well, no, because it's overly |
| 10:30 19 | broad. It doesn't relate to consignment, necessarily. |
| 10:30 20 | It's -- |
| 10:30 21 | MR. VASEK: Your objection for these requests |
| 10:30 22 | have been overruled. Your objection has been overruled. |
| 10:30 23 | MS. BIALZIK: Well, the transcript very clearly |
| 10:30 24 | said on the parameters what was being ordered, and more |
| 10:30 25 | importantly, the landscape of the case has changed |

Transcription of a Telephone Call - September 5, 2018

10:30 1    because we have withdrawn issues from the case.

10:30 2        So issues that you might have had a reasonable

10:30 3    need to conduct discovery are no longer part of the

10:30 4    case, and the law is clear that, you know, discovery

10:31 5    obligation for responding to an issue go away when the

10:31 6    issue goes away.  So ...

10:31 7        MR. VASEK:  But the consignment issue hasn't

10:31 8    gone away.

10:31 9        MS. BIALZIK:  Right.  But Davor was clear about

10:31 10    what he was looking for with -- relating to

10:31 11    communications about consignment, and it was the

10:31 12    salespeople on the ground, and we've produced that.

10:31 13    So --

10:31 14        MR. VASEK:  Yeah, I don't think that's a fair

10:31 15    interpretation of what was said at that hearing, and

10:31 16    I -- it sounds like we're just going to have to let the

10:31 17    Judge decide, which I don't think he's going to be very

10:31 18    happy about.

10:31 19        MS. BIALZIK:  Well, he may not be.  You can

10:31 20    certainly respond to our Motion for Protective Order and

10:31 21    explain what --

10:31 22        MR. VASEK:  Well, at this point, guys, I think

10:31 23    we're going to have to file a motion to hold St. Jude in

10:31 24    contempt.

10:31 25        MS. BIALZIK:  Well, we believe we have fully

## Transcription of a Telephone Call – September 5, 2018

10:31  1  complied with the Court's order here, and moreover,

10:31  2  we've also, you know, removed the discovery issue.

10:31  3  We've fully complied with the Court's order in the first

10:31  4  instance.  We did a reasonable search.  We produced what

10:31  5  we had.

10:31  6        And I'd be happy with the fact that the

10:31  7  documents don't exist because of the Abbott's and

10:31  8  St. Jude's, you know, purge policies, but that's --

10:31  9  that's the reality.  So we don't think a Motion for

10:32 10  Contempt is appropriate, and we don't think it would be

10:32 11  brought in good faith; and, you know, that would be our

10:32 12  response.

10:32 13        MR. VASEK:  Well, if you're unwilling to

10:32 14  undertake the search we suggested, then I think that

10:32 15  St. Jude's in contempt of the order.

10:32 16        MS. BIALZIK:  No.  The search is broadly beyond

10:32 17  what was ordered at the hearing, and so this is a new

10:32 18  search that's far out what --

10:32 19        MR. VASEK:  This is not like -- this is not a

10:32 20  difficult search.  It is without taking an IT person

10:32 21  very long to conduct, especially if there are no

10:32 22  emails -- if there really are none, then it shouldn't

10:32 23  take any time at all to conduct it.

10:32 24        MS. BIALZIK:  You're -- he's talking about the

10:32 25  30 -- the 41 new names of emails that he wants searched.

Transcription of a Telephone Call - September 5, 2018

10:32 1    MR. VASEK: Yeah, but if there are none, then

10:32 2    there's nothing to search, and just say that; but you're

10:32 3    not saying that. You're saying it's going to be a

10:32 4    hugely burdensome search, which suggests to me there's a

10:32 5    lot of information out there.

10:32 6    MS. BIALZIK: You're unwilling to do any search

10:32 7    of your emails, because you're saying it's greatly

10:32 8    expensive. You have these names. In fact, what Davor

10:33 9    represented is, the only reason you haven't de-archived

10:33 10   emails is because you don't know who to search. So you

10:33 11   can search --

10:33 12   MR. VASEK: And because it's expensive. We

10:33 13   have to pay a third party. We have to get court

10:33 14   approval to do that. It's not -- I mean, we don't have

10:33 15   a lot of money laying around --

10:33 16   MR. JOHNSON: You don't seem to have a problem

10:33 17   taking this case to the Supreme Court, if it needs be;

10:33 18   do you?

10:33 19   MR. VASEK: Well, I don't think we're going to

10:33 20   be going to the Supreme Court, but --

10:33 21   MS. BIALZIK: Well, that's certainly what you

10:33 22   indicated in your letter to us, so ...

10:33 23   MR. VASEK: I think, if St. Jude -- excuse me,

10:33 24   Abbott has a 30-day policy, I think that probably needs

10:33 25   to be tested in the courts, you know. I ...

Transcription of a Telephone Call - September 5, 2018

10:33 1        MS. BIALZIK: In our preference case where we

10:33 2  provided concrete evidence of delivery dates, that, you

10:33 3  think, you -- that is an appropriate context for us to

10:33 4  be --

10:33 5        MR. VASEK: You have provided evi- -- you have

10:33 6  provided handpicked evidence that supports your version

10:33 7  of the facts, and you've denied access to any other

10:34 8  evidence. I don't know how you think that's reasonable,

10:34 9  guys, and --

10:34 10       MS. BIALZIK: I don't know how you think that

10:34 11  the documents don't show what they purport to show and

10:34 12  how anything could contradict the clear evidence we've

10:34 13  provided. So unless you can come up with some good

10:34 14  faith explanation based on actual evidence that you've

10:34 15  seen --

10:34 16       MR. VASEK: Guys, we've already explained it to

10:34 17  the Court, and the Court has overruled your

10:34 18  objections and compelled you to produce the documents.

10:34 19  We don't have to explain it to you anymore.

10:34 20       I've explained it on this call, which has been

10:34 21  explained in letters, you know. We don't have to give

19:34 22  you a Supreme Court brief laying out our case in order

10:34 23  to obtain the -- that's not how it works.

10:34 24       MS. BIALZIK: Well, no, because the merits are

10:34 25  in front of the Court, and you have never explained why

Transcription of a Telephone Call - September 5, 2018

10:34   1   you have a concrete good faith belief based on actual

10:34   2   evidence that the documents that we presented to the

10:34   3   Court don't show what they purport to show, which are

10:34   4   delivery dates.

10:34   5           MR. VASEK:  I've explained it --

10:34   6           MS. BIALZIK:  And so --

10:34   7           MR. VASEK:  -- more than once in the last 30

10:34   8   minutes.

10:34   9           MS. BIALZIK:  What?

10:34  10           MR. VASEK:  I said I've explained it more than

10:34  11   once in the last 30 minutes.

10:34  12           MS. BIALZIK:  Oh, you have vague guesses that

10:34  13   maybe there could be something out there that

10:35  14   contradicts the clear evidence.  That's not a good faith

10:35  15   belief based on actual evidence.

10:35  16           MR. VASEK:  Okay.  Well, this --

10:35  17           MS. BIALZIK:  It simply does not.

10:35  18           MR. VASEK:  This is the argument you made at

10:35  19   the hearing, and the Judge already disagreed with you on

10:35  20   that.

10:35  21           MS. BIALZIK:  Well, that was in the context of

10:35  22   ordinary course, primarily, and also --

10:35  23           MR. VASEK:  No.

10:35  24           MS. BIALZIK:  -- in the clear fact that the

10:35  25   merits were not in front of the Judge.  The merits are

33

Transcription of a Telephone Call - September 5, 2018

| 10:35 | 1 | in front of the Judge. Ordinary course is gone. |
| 10:35 | 2 | Proportionality is part of the Rules, and, frankly, the |
| 10:35 | 3 | reality is we've complied with the order and we produced |
| 10:35 | 4 | what we have. |
| 10:35 | 5 | So if you want to, you know, respond to our |
| 10:35 | 6 | motion, certainly go ahead. If you want to suggest |
| 10:35 | 7 | 56(d), we think it will fail because we don't think you |
| 10:35 | 8 | can articulate anything, but that's your prerogative. |
| 10:35 | 9 | If you could identify one person who actually |
| 10:35 | 10 | was related to this specific inventory in some |
| 10:35 | 11 | meaningful way, obviously we'd consider that. We've |
| 10:35 | 12 | also offered to conciliate and offer up Mr. Genovese for |
| 10:35 | 13 | his deposition if you still have questions -- |
| 10:35 | 14 | MR. VASEK: Well, that's what we're -- that is |
| 10:35 | 15 | what we're trying to figure out from you. We are -- we |
| 10:35 | 16 | are Trustee. We don't have a personal relationship with |
| 10:35 | 17 | everyone who used to work for the debtor who are all |
| 10:36 | 18 | long gone now. I mean, the only way for us to find out |
| 10:36 | 19 | whether these people had the meaningful relationship |
| 10:36 | 20 | you're talking about is by asking St. Jude. |
| 10:36 | 21 | MS. BIALZIK: Well, you can ask Mr. Genovese if |
| 10:36 | 22 | he can confirm what's in his affidavit, that there was |
| 10:36 | 23 | no consignment inventory; and other than thinking that |
| 10:36 | 24 | he might be a liar, which you have no evidence of, |
| 10:36 | 25 | there's -- I mean, the evidence is there. You have |

Julia Whaley & Associates
214-668-5578   JuliaTXCSR@gmail.com   ResponseContemptApp'x.077

Transcription of a Telephone Call - September 5, 2018

10:36 1   nothing to contradict it, and that's not good faith.

10:36 2          So if you want to bring a 56(d) response, you

10:36 3   can, but, frankly, you have not articulated any actual

10:36 4   evidence that you've seen that contradicts the clear

10:36 5   evidence we've submitted to the Court.

10:36 6          MR. JOHNSON: Have you -- Julian, have you --

10:36 7   since you've looked up the last 365 suits against

10:36 8   Abbott, have you done a search as to Mr. Genovese's

10:36 9   character since you seem to be impeaching it?

10:36 10         MR. VASEK: No, but the search for Abbott did

10:36 11  turn up over 5,400 results.

10:36 12         MS. BIALZIK: Well, I don't think that has

10:36 13  anything to do with anything. So, you know --

10:37 14         MR. VASEK: I think it -- if the evidence --

10:37 15         MS. BIALZIK: I would do a little research and

10:37 16  look at the case law about corporate policies and what

10:37 17  they're allowed to do, and -- but, frankly, that is just

10:37 18  a complete red herring, wild-goose chase in this case

10:37 19  when the issues are simple and clear and its delivery

10:37 20  date is -- there's no reason to be even having these

10:37 21  discussions.

10:37 22         It's simply an attempt, to us, by the Trustee

10:37 23  to avoid having to look at the merits. Look at the

10:37 24  delivery dates. You tell us where you think --

10:37 25         MR. VASEK: But we can't -- we can't evaluate

Transcription of a Telephone Call — September 5, 2018

| | | |
|---|---|---|
| 10:37 | 1 | the merits without all the evidence. |
| 10:37 | 2 | MS. BIALZIK: You have all the evidence, so ... |
| 10:37 | 3 | MR. VASEK: Well, I don't think we do. |
| 10:37 | 4 | MS. BIALZIK: Well, then, you know, bring a |
| 10:37 | 5 | 56(d) motion, but we don't think you can articulate a |
| 10:37 | 6 | good faith belief that anything exists out there that |
| 10:37 | 7 | could contradict what's in the records. So ... |
| 10:37 | 8 | MR. VASEK: Guys, on the one hand, you're |
| 10:37 | 9 | telling me that emails are destroyed, but you refuse to |
| 10:37 | 10 | produce copies of a document retention policy. Why is |
| 10:37 | 11 | that? |
| 10:37 | 12 | MS. BIALZIK: Because it's irrelevant at this |
| 10:37 | 13 | point. The good -- that we've searched the people that |
| 10:37 | 14 | you've said might have information. We've told you |
| 10:37 | 15 | what -- that we produced what we have, and the ordinary |
| 10:38 | 16 | course is out of the case and the merits are in front of |
| 10:38 | 17 | the Court; and any further discussion about just random |
| 10:38 | 18 | communications between the parties is irrelevant. |
| 10:38 | 19 | MR. VASEK: Okay. So you're not going to |
| 10:38 | 20 | conduct a further search. You're not going to produce |
| 10:38 | 21 | any of the information or documents we've requested with |
| 10:38 | 22 | respect to the document retention policy; is that right? |
| 10:38 | 23 | MS. BIALZIK: We're not going to -- no, we're |
| 10:38 | 24 | not going to produce document retention policies. And, |
| 10:38 | 25 | again, if you could actually articulate a specific |

Transcription of a Telephone Call - September 5, 2018

10:38  1    individual and explain their relationship to this
10:38  2    alleged consignment inventory, we would consider it, but
10:38  3    we're not going to just do a random search of names of
10:38  4    people you happen to think work at St. Jude at some
10:38  5    point in time.
10:38  6            MR. VASEK:  Okay.  Well, I'll just say it one
10:38  7    more time, your objections have been overruled.  The
10:38  8    Court has ordered you to conduct a reasonable search.  I
10:38  9    don't think you have come anywhere close to conducting a
10:38 10    reasonable search.
10:38 11            MS. BIALZIK:  We disagree.  We believe we
10:39 12    conducted a reasonable search absolutely consistent with
10:39 13    what was being discussed on the record at that hearing.
10:39 14    So -- and moreover, the landscape has changed.
10:39 15            MR. VASEK:  Landscape has changed, but not with
10:39 16    respect to consignment.
10:39 17            MS. BIALZIK:  Well, but the -- you know, the --
10:39 18            MR. VASEK:  Limit your search to consignment-
10:39 19    related issues.  I mean -- or your production.  It's
10:39 20    not -- again, I don't understand the position.  If there
10:39 21    are no documents, then this can't possibly be
10:39 22    burdensome.
10:39 23            I mean, if these 41 people don't have any
10:39 24    emails, then there's nothing to search, and you should
10:39 25    write back and just say that.

Transcription of a Telephone Call - September 5, 2018

10:39 1    MS. BIALZIK: Well, we wrote back and said that
10:39 2    the salespeople didn't have an email, and then you came
10:39 3    up with a whole list of people you had never mentioned
10:39 4    before. We feel that --
10:39 5        MR. VASEK: At your request, we did, yes.
10:39 6        MS. BIALZIK: -- [indiscernible]. So, you
10:39 7    know, you identified the salespeople. You said you
10:39 8    wanted us to search them, we did, and then now you've
10:39 9    identified 41 new people that you think you want us to
10:40 10   search; and that was not part of anything you've done
10:40 11   before.
10:40 12       And so, even if we did that, you would come
10:40 13   back and try to identify new people. We feel like this
10:40 14   is just an attempt to avoid the merits, because you have
10:40 15   the evidence you need to evaluate our new value defense,
10:40 16   which is the only thing that remains in the case.
10:40 17       MR. VASEK: I'm telling you we don't have all
10:40 18   the evidence we need. Again, every other defendant has
10:40 19   provided us what we needed. We settled. We walked away
10:40 20   completely from some. We would do that here if we
10:40 21   thought that St. Jude was being open and honest, but we
10:40 22   don't believe that.
10:40 23       MS. BIALZIK: I don't believe that you think
10:40 24   that. I think that this is -- I don't know what your --
10:40 25   your point here is, but St. Jude has been transparent

Transcription of a Telephone Call - September 5, 2018

10:40  1   with its defenses.  From the very beginning -- we've

10:40  2   provided, from the very beginning, the document that

10:40  3   supports new value that shows delivery dates.

10:40  4          There's no reason to think that St. Jude is

10:40  5   hiding anything, because there's no reason to believe

10:40  6   that there's anything out there that could contradict

10:40  7   this.  So --

10:40  8          MR. VASEK:  Of course there is reason.  I

10:40  9   mean --

10:40 10          MS. BIALZIK:  But that -- this is just a

10:40 11   bullying tactic trying to run up our fees; and, you

10:40 12   know, frankly, with -- the merits are in front of the

10:40 13   Court, and we believe it's all clearly in front of the

10:41 14   Court.

10:41 15          MR. VASEK:  Okay.  So there's no wiggle room on

10:41 16   anything.

10:41 17          MS. BIALZIK:  That's not what we said.  We

10:41 18   said, if you could articulate a specific individual and

10:41 19   what relationship that individual might've had to an

10:41 20   actual consignment inventory that doesn't exist --

10:41 21          MR. VASEK:  We have articulated search terms --

10:41 22          MS. BIALZIK:  -- and a list of employees you've

10:41 23   identified is not reasonable, is not related to

10:41 24   the issues in the case, is not proportional.

10:41 25          MR. VASEK:  It is -- it is proportional.

39

Transcription of a Telephone Call - September 5, 2018

10:41 1    There's almost half a million dollars that was taken off

10:41 2    the case.

10:41 3            MR. JOHNSON:   That doesn't make it --

10:41 4            MS. BIALZIK:   Well, no, because --

10:41 5            MR. JOHNSON:   -- proportional.

10:41 6            MS. BIALZIK:   -- we believe there is, and

10:41 7    that's the whole point of our new value defense, is

10:41 8    that, in fact, the amounts that are at stake are, if

10:41 9    anything, very small because we have solid evidence of

10:41 10   delivery dates.

10:41 11           Now, if there's a few specific items that you

10:41 12   take issue with and want to discuss with us, let us

10:41 13   know; but, I mean, to suggest that somehow an entire

10:41 14   slew of documents that shows delivery dates, both by

10:41 15   FedEx and hand-carry, even what it purports to be,

10:41 16   there's just no good faith basis to say that.

10:42 17           And if there were some discussion about a

10:42 18   consignment inventory, Rick Leonard surely would be the

10:42 19   person who would have those emails; and if he doesn't --

10:42 20   if you have no emails from him that are talking about a

10:42 21   consignment inventory, then that ought to be enough to

10:42 22   show you that it doesn't exist.

10:42 23           And there's no good faith basis to go on

10:42 24   fishing expeditions beyond that when your own evidence

10:42 25   is confirming the fact that there is no consignment

Julia Whaley & Associates
214-668-5578   JulieTXCSR@gmail.com

40

Transcription of a Telephone Call - September 5, 2018

10:42 1   inventory.

10:42 2        MR. VASEK:  You're not anywhere near a fishing

10:42 3   expedition.  A fishing expedition is all emails.  I

10:42 4   mean, this is -- we've identified certain people.  We've

10:42 5   identified the property, consignments, the debtor.

10:42 6        We're not asking for all of these people's

10:42 7   emails that they sent to anyone and everyone for four

10:42 8   years.  That's not what we're asking for.  It's an

10:42 9   extremely narrow search, and, again, if there really is

10:42 10   nothing to search, then -- well, it's -- it can't be

10:42 11   anything but narrow.  I mean, that all ...

10:42 12        MS. BIALZIK:  You actually did ask us to search

10:42 13   out broadly all of their emails for as far back as we

10:42 14   can go in four years; that's exactly what your letter

10:43 15   said, and, you know, that's not what you were asking for

10:43 16   at the hearing and --

10:43 17        MR. VASEK:  It said that to October 2013.

10:43 18        MS. BIALZIK:  To ask for something more.  And,

10:43 19   again, we're not going to keep going back and playing

10:43 20   this game when there's no reasonable basis to believe

10:43 21   that there's anything more out there.  You have our

10:43 22   client's emails.  They confirm that there's no

10:43 23   discussion of consignment inventory.

10:43 24        Your own evidence confirms what our sworn

10:43 25   declarant has said on the -- you know, under oath, and

Transcription of a Telephone Call - September 5, 2018

10:43 1    there's just no good basis to -- faith basis to continue

10:43 2    down this road when you know it's not relevant and you

10:43 3    have the delivery date documents. Evaluate those and

10:43 4    come back with an actual evaluation of our new value

10:43 5    defense, and we can discuss it.

10:43 6         MR. VASEK: And I've been telling you I can't

10:43 7    do that without seeing the emails.

      8                   (Simultaneous speaking.)

10:43 9         MS. BIALZIK:  -- you can, because we

10:43 10   couldn't --

     11                   (Simultaneous speaking.)

10:43 12        MR. VASEK:  I'm not saying Mr. Leonard -- or,

10:43 13  excuse me, Genovese is a liar, but he could be mistaken.

10:43 14  He could be misremembering. It's been a while. I don't

10:43 15  know.

10:43 16        MS. BIALZIK:  Well, then, clearly, there should

10:44 17  be some communication between him and Mr. Leonard that

10:44 18  you would have that will discuss --

10:44 19        MR. VASEK: I don't know why it's clearly just

10:44 20  him. Again, there were over 300 employees. I don't

10:44 21  know who they all were. I don't know who Mr. Genovese

10:44 22  might've been talking to.

10:44 23        MS. BIALZIK:  Well, he surely would've been

10:44 24  talking to his point person if there was, in fact, a

10:44 25  consignment inventory. So I just -- I mean, there's

Julia Whaley & Associates
214-668-5578  JulieTXCSR@gmail.com  ResponseContempt:Appx.088

Transcription of a Telephone Call - September 5, 2018

10:44 1  just no good faith basis here.  You've got what you

10:44 2  need, and I think that the record will confirm that.

10:44 3        And, you know, you can, again, respond to our

10:44 4  Motion for Protective Order.  You can say these things

10:44 5  to the Court, but I don't think that -- I don't think

10:44 6  that the -- you're continuing to proceed here on good

10:44 7  faith, because the evidence is clear.  It's

10:44 8  uncontradicted.  There is no --

10:44 9        MR. VASEK:  But it's uncontradicted because you

10:44 10  won't provide any other evidence.

10:44 11       MS. BIALZIK:  Because you have evidence that

10:44 12  you have access to, as well, and your evidence.  Your --

10:44 13  Mr. Leonard or --

10:44 14       MR. VASEK:  We are asking you for evidence that

10:44 15  we don't have access to.  Okay.  I don't know why you

10:44 16  keep saying that.  I know you're trying to make the

10:44 17  record because you've got a court reporter return --

10:44 18  record this call, but you keep saying things that are

10:45 19  not true.

10:45 20       MR. JOHNSON:  That's not --

10:45 21       MR. VASEK:  We're asking for documents we don't

10:45 22  have.  Okay?

10:45 23       MS. BIALZIK:  Well, you have access to all the

10:45 24  communications between the parties.  If you had a good

10:45 25  faith belief that some --

Julia Whaley & Associates
214-668-5578  JulieTXCSR@gmail.com    ContemptApp'x 086

43

Transcription of a Telephone Call - September 5, 2018

10:45 1      MR. VASEK: No, we don't.

10:45 2      MS. BIALZIK: We've produced the emails that

10:45 3  you asked for, the -- with the salespeople and even

10:45 4  beyond that that we had a good faith belief might have

10:45 5  had some communications on any of these issues. We

10:45 6  searched for those people's emails, and we've provided

10:45 7  what we have.

10:45 8      And so -- and you can't -- you know, you

10:45 9  haven't articulated anybody else that actually had some

10:45 10 relationship to this alleged consignment inventory.

10:45 11 You've just got a list of random --

10:45 12     MR. VASEK: But there's -- again, there's no

10:45 13 way for us to know that. That's --

10:45 14     MR. JOHNSON: No, that's not -- let's be clear

10:45 15 about this. Just because you have a -- you have a box

10:45 16 of information that there is a barri- -- an economic

10:45 17 barrier to you properly understanding, that doesn't mean

10:45 18 that it doesn't exist.

10:45 19     MR. VASEK: I don't understand what you're

10:45 20 saying.

10:45 21     MR. JOHNSON: Let's say you have a box full of

10:46 22 documents written in Latin and you can't afford the

10:46 23 translator. That doesn't mean the box isn't still there

10:46 24 and has the information. The box is there and has --

25              (Simultaneous speaking.)

44

Transcription of a Telephone Call – September 5, 2018

10:46  1      MR. JOHNSON: -- the information.

10:46  2      MR. VASEK: -- copies, then --

10:46  3      MR. JOHNSON: It doesn't --

10:46  4      MR. VASEK: -- I think --

10:46  5      MR. JOHNSON: -- not exist.

10:46  6      MR. VASEK: -- it's proportional for you to

10:46  7 produce them.

10:46  8      MS. BIALZIK: We don't have translated copies.

10:46  9 We don't have the emails. So I think -- I mean, again,

10:46 10 if you can articulate something much more specific --

10:46 11 obviously, we're always going to consider it, but we

10:46 12 think our position is clear.

10:46 13      We think the issue is simple. It is

10:46 14 straightforward. It's in front of the Court. The

10:46 15 evidence is uncontradicted. We don't believe that

10:46 16 there's any good faith reason for you to think --

10:46 17      MR. VASEK: And, look, if you will send -- if

10:46 18 you will send me something in writing that says there

10:46 19 are no more -- no more emails exist that could possibly

10:46 20 be relevant, besides the ones we have produced, then I

10:46 21 think we can have a different conversation.

10:46 22      MR. JOHNSON: Well --

10:46 23      MS. BIALZIK: Well, we've confirmed, for the

10:46 24 people we've searched, that we produced the emails that

10:46 25 they have.

Transcription of a Telephone Call - September 5, 2018

10:46   1         MR. VASEK: Okay. Well, you've searched seven

10:46   2   people only; is that right?

10:46   3         MS. BIALZIK: Whatever all the people we told

10:46   4   you, and they were the people who were involved. They

10:47   5   were the salespeople you requested and the people who

10:47   6   were involved with the account.

10:47   7         MR. VASEK: Okay. And we've since gone through

10:47   8   and identified other people who were involved in some

10:47   9   way because they were copied on emails.

10:47   10        MS. BIALZIK: Copied on email doesn't mean

10:47   11   they're involved in some way. You can't -- I mean,

10:47   12   it --

10:47   13        MR. VASEK: It doesn't?

10:47   14        MS. BIALZIK: -- sounds like somebody might've

10:47   15   been copied on --

10:47   16        MR. JOHNSON: No.

10:47   17        MS. BIALZIK: -- the email, but seeing

10:47   18   somebody's name pop up is not a reason to believe they

10:47   19   had any involvement in anything.

10:47   20        MR. VASEK: Okay. Well, I'm going to have to

10:47   21   disagree with you on that, but -- I mean, but I'm not

10:47   22   sure there's much more to this --

10:47   23        MR. JOHNSON: Going -- going back to this

10:47   24   consignment situation, you gave us the one name of --

10:47   25   what is the other name?

Transcription of a Telephone Call - September 5, 2018

10:47 1       MR. VASEK: I don't --

10:47 2       MR. JOHNSON: Rick Winters was the one name.

10:47 3  What's the name of the other --

10:47 4       MS. BIALZIK: Rick Leonard.

10:47 5       MR. VASEK: Leonard.

10:47 6       MR. JOHNSON: Leonard, yeah. Okay.

10:47 7       MR. VASEK: I don't think there's another name.

10:47 8  Then we must've had a miscommunication.

10:47 9       MS. BIALZIK: Well, so you have the one name of

10:47 10  the person on your end who would have knowledge, and you

10:48 11  have his emails.

10:48 12       MR. VASEK: Well, he's not --

10:48 13       MS. BIALZIK: So --

10:48 14       MR. VASEK: He's a third party.

10:48 15       MS. BIALZIK: Well, no. Come on here. You're

10:48 16  the Trustee and you're acting on behalf of the debtor,

10:48 17  and so --

18                  (Simultaneous speaking.)

10:48 19       MS. BIALZIK: -- you have access to use that

10:48 20  information.

10:48 21       MR. VASEK: No. We don't --

10:48 22       MS. BIALZIK: You have access --

10:48 23       MR. VASEK: -- [indiscernible] with him.

10:48 24       MS. BIALZIK: You have access to Rick Leonard.

10:48 25  You have conversations with him. You can ask him. He

Transcription of a Telephone Call – September 5, 2018

10:48  1  hasn't put in a sworn affidavit that says something

10:48  2  different than what Mr. Genovese has said.  So, you

10:48  3  know, you have a duty of due diligence on your part to

10:48  4  look at your own evidence and see if there's anything in

10:48  5  good faith that leads you to believe that --

10:48  6      MR. VASEK:  And we've already brought this

10:48  7  before the Judge, and he's already found that we have a

10:48  8  good faith basis to investigate consignment.

10:48  9      MR. JOHNSON:  With regard to a different --

       10                    (Simultaneous speaking.)

10:48 11      MR. JOHNSON:  -- cause of action.

10:48 12      MS. BIALZIK:  -- salespeople on the ground,

10:68 13  which is what Davor said, which is what we did.

10:48 14      MR. JOHNSON:  Julian, do you have anything in

10:48 15  your schedules that would indicate that there was

10:48 16  consignment property on site at the petition date?

10:48 17      MR. VASEK:  We don't know.

10:48 18      MS. BIALZIK:  You don't -- you haven't looked?

10:48 19      MR. VASEK:  Well, guys, I looked at a lot of

10:48 20  stuff.  I ...

10:48 21      MR. JOHNSON:  It's the schedule, sir.

10:49 22      MR. VASEK:  We're not here to -- the Judge has

10:49 23  already found that we have a good faith basis to

10:49 24  investigate consignment.

10:49 25      MS. BIALZIK:  And we --

Transcription of a Telephone Call — September 5, 2018

10:49 1        MR. VASEK:  I don't --

10:49 2        MS. BIALZIK:  -- for the Court's order, we've

10:49 3  provided the information.  Now you're fishing, and you

10:49 4  have nothing to support it.

10:49 5        MR. VASEK:  Okay.

6                      (Simultaneous speaking.)

10:49 7        MR. VASEK:  And, guys, for you -- we don't need

10:49 8  to keep arguing about this.  Okay?  It's obvious we're

10:49 9  not --

10:49 10        MS. BIALZIK:  We don't, but we do need to set a

10:49 11  date for our motion.  The Court has asked us to do that.

10:49 12        MR. VASEK:  Well --

10:49 13        MS. BIALZIK:  And it seems to me the Court, on

10:49 14  the last time you were in front of him, did say he was

10:49 15  going to be here on October 23rd.  Should we suggest

10:49 16  that as the date?

10:49 17        MR. VASEK:  October 23rd?

10:49 18        MR. JOHNSON:  Let me look at mine.

10:49 19        MR. VASEK:  Did he indicate how much time he

10:49 20  has available?  I mean, I --

10:49 21        MS. BIALZIK:  Then why don't we check with him.

10:49 22  He just happened to say that date, and so we know at

10:49 23  least that's an option.

10:49 24        MR. VASEK:  And I would like to.  Just a

10:49 25  second.  We're going to file a Motion for Contempt.

Transcription of a Telephone Call - September 5, 2018

10:49 1  We're going to file a Motion to Compel the most recent

10:50 2  discovery. You know, we're --

10:50 3      MS. BIALZIK: We will tell the Court we believe

10:50 4  it's from bad faith, and that's fine.

10:50 5      MR. VASEK: Okay. Then I think we should

10:50 6  probably just go ahead and set these all at the same

10:50 7  time since his availability is limited.

10:50 8      MS. BIALZIK: Well, October 23rd should be more

10:50 9  than enough time for you to file whatever you want to

10:50 10 file and give us time to respond.

10:50 11     MR. VASEK: That's fine, but I think the -- my

10:50 12 only hesitation is I want to make sure he has a couple

10:50 13 hours that day.

10:50 14     MR. JOHNSON: Yeah. Is that his --

     15         (Simultaneous speaking.)

10:50 16     MR. JOHNSON: -- consumer docket?

10:50 17     MS. BIALZIK: -- couple hours, we don't. We

10:50 18 think it's pretty straightforward, but ...

10:50 19     MR. VASEK: Well, I mean, I -- it looks like

10:50 20 we're open on that day, provided the Court has enough

10:50 21 time.

10:50 22     MR. JOHNSON: Okay. I look good, too.

10:50 23     MR. VASEK: And that -- yeah. Okay. Well,

10:50 24 that's fine. I would just ask that you confirm that he

10:50 25 has, you know, at least an hour.

Transcription of a Telephone Call – September 5, 2018

10:50    1          MS. BIALZIK:   That's reasonable.   An hour's

10:51    2    fine.

10:51    3          MR. JOHNSON:   Uh-huh.

10:51    4          MR. VASEK:   Okay.  Well, is there anything

10:51    5    else?

10:51    6          MS. BIALZIK:   Not on our end.

10:51    7          MR. VASEK:   All right, guys.   Well, thanks for

10:51    8    taking the time this morning.

10:51    9          MS. BIALZIK:   Okay.   Thank you.

10:51   10          MR. VASEK:   Bye.

        11                        (End of Proceedings.)

        12

        13

        14

        15

        16

        17

        18

        19

        20

        21

        22

        23

        24

        25

Transcription of a Telephone Call – September 5, 2018

1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS

2

DALLAS DIVISION

3

In re:                          ) Chapter 7
                                )
4

WALNUT HILL PHYSICIANS'          ) Bankruptcy: 17-32255-bjh7
HOSPITAL, LLC,                   )
5                                )
                                )
        Debtor in Liquidation.   )

6

7

SCOTT M. SEIDEL, CHAPTER         )
7 TRUSTEE,                       )

8                                ) Adversary: 18-03033-bjh
        Plaintiff,               )

9                                )
        v.                       )

10                               )
ST. JUDE MEDICAL S.C., INC.,     )

11                               )
        Defendant.               )

12

13                  REPORTER'S CERTIFICATE

14              TRANSCRIPTION OF A TELEPHONE CALL

15                     SEPTEMBER 5, 2018

16

17          I, Adrianne Harris, Certified Shorthand

18     Reporter in and for the State of Texas, hereby certify

19     that this transcript is a true record of the

20     proceedings.

21              I further certify that I am neither counsel

22     for, related to, nor employed by any of the parties in

23     the action in which this proceeding was taken, and,

24     further that I am not financially or otherwise

25     interested in the outcome of this action.

52

Transcription of a Telephone Call – September 5, 2018

1          Certified to by me on this _____ day of

2    _____, _____.

3

4

5                              _____

6                              ADRIANNE HARRIS, CSR
                               CSR Certificate No. 7967
7                              Expiration Date:  12-31-19
                               Julia Whaley & Associates
8                              Firm Registration No. 436
                               2012 Vista Crest Drive
9                              Carrollton, Texas  75007-1640
                               (214)668-5578/Fax:  (972)236-6666
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Transcription of a Telephone Call - September 5, 2018

**1**

7059 [1] 2/12
10:05 [1] 1/22
10:51 [1] 1/22
111 [2] 6/9 7/16
12-31-19 [1] 52/7
1610 [1] 2/18
1640 [1] 52/9
17-32256-bjh7 [2] 1/4 51/4
18-03033-bjh [2] 1/9 51/8
19 [1] 52/7

**2**

20 [1] 15/3
2012 [1] 52/8
2013 [1] 40/17
2018 [3] 1/16 1/22 51/15
214 [4] 2/5 2/6 2/18 52/9
215-6402 [1] 2/18
236-6666 [1] 52/9
23rd [3] 48/15 48/17 49/8
25th [1] 3/15
26 [2] 13/18 13/22

**3**

30 [4] 25/24 29/25 32/7 32/11
30-day [3] 7/14 25/22 30/24
300 [2] 16/24 41/20
333-1610 [1] 2/18
385 [1] 34/7
3800 [1] 2/4
3rd [2] 3/21 7/4

**4**

40 [3] 16/18 16/18 17/12
41 [3] 29/25 36/23 37/9
414 [2] 2/12 2/13
436 [1] 52/8
4650 [1] 2/11

**5**

5,400 [1] 34/11
500 [3] 2/4 6/10 7/16
503 [1] 18/4
5110 [1] 2/12
53212-1059 [1] 2/12
56 [9] 15/19 15/19 18/2 21/18 21/25 25/4 33/7
34/2 35/5

**6**

60 [1] 15/2
6402 [1] 2/18
6859 [1] 2/5
6666 [1] 52/9
888-557B/Fax [1] 52/9

**7**

705 [2] 1/25 2/17
75007-1640 [1] 52/9
75201-6669 [1] 2/5
75202 [1] 2/17
7528 [1] 2/9
7584 [1] 2/6
7967 [1] 52/6

**8**

817 [1] 2/18
855-7528 [1] 2/5
855-7584 [1] 2/6
8725 [1] 2/13

**9**

962-5110 [1] 2/12
962-8725 [1] 2/13
972 [1] 52/9

**A**

a.m [2] 1/22 1/22
Abbott [6] 6/9 7/18 7/21 30/24 34/8 34/10
Abbott's [2] 26/3 29/7
ability [2] 8/23 20/20
able [1] 7/19
about [28] 4/16 5/3 6/12 6/13 6/17 10/20
10/21 12/15 12/16 14/1 17/1 18/9 20/7 22/14
26/17 27/15 27/16 28/9 28/11 28/18 29/24
33/20 34/16 35/17 39/17 39/20 43/15 48/8
above [1] 1/21
above-styled [1] 1/21
absolutely [3] 11/21 27/2 36/12
access [11] 4/11 5/19 19/18 21/20 31/7 42/12
42/15 42/23 46/19 46/22 46/24
account [5] 13/5 13/6 16/9 22/11 45/6
accounted [1] 8/17
accounts [2] 16/21 22/8
across [1] 7/20
acting [2] 27/2 46/16
action [3] 47/11 51/23 51/25
actual [6] 4/3 6/11 31/14 32/1 32/15 34/3
38/20 41/4
actually [7] 5/24 6/16 16/2 33/9 35/25 40/12
43/9
additional [3] 3/18 3/23 4/6
address [1] 2/4
Adrianne [3] 1/23 51/17 52/6
adversary [3] 1/8 15/6 51/8
affidavit [2] 33/22 47/1
afford [3] 15/25 18/24 43/22
again [19] 6/6 7/16 15/20 18/18 19/4 19/6
21/12 24/24 25/3 26/14 35/25 36/20 37/18
40/9 40/19 41/20 42/3 43/12 44/9
against [3] 9/25 10/1 34/7
aggressive [1] 19/21
agree [2] 10/9 12/13
agreed [2] 10/11 24/14
agreement [3] 12/7 20/15 20/19
agrees [1] 12/7
ahead [6] 3/3 4/23 4/24 15/19 33/8 49/6
aimed [1] 19/25
Akard [1] 2/4
all [41] 3/2 4/2 4/14 6/3 8/6 8/8 8/12 8/15 8/18
9/8 9/13 9/16 9/20 11/23 13/6 14/21 14/23
15/18 15/24 16/22 17/24 18/5 18/23 19/15
23/5 25/13 29/23 33/17 35/1 35/2 37/17 38/13
40/3 40/6 40/11 40/13 41/21 47/23 45/3 49/6
50/7
alleged [2] 36/2 43/10
alleged consignment [1] 43/10
allowed [3] 19/22 20/3 34/17
almost [2] 7/18 38/1
already [6] 4/2 23/25 24/14 31/16 32/19 47/6

47/7 47/23
already found [1] 47/7
also [5] 8/8 13/4 29/2 32/22 33/12
alternate [1] 3/18
always [2] 25/12 44/11
am [2] 51/21 51/24
amongst [1] 27/16
amounts [1] 39/8
another [4] 6/16 7/22 19/17 46/7
anticipate [1] 8/3
any [24] 4/6 5/22 5/23 7/2 7/15 9/15 16/7 18/6
22/3 22/12 22/21 27/9 29/23 30/6 31/7 34/3
35/17 35/21 36/23 42/10 43/5 44/16 45/19
51/22
anybody [2] 22/6 43/9
anymore [2] 7/11 31/19
anyone [1] 40/7
anything [28] 4/11 5/10 6/1 6/3 10/22 10/24
11/6 14/16 20/12 21/23 26/17 25/18 31/12
33/8 34/13 34/13 35/8 37/10 38/5 38/6 38/16
39/9 40/11 40/21 45/19 47/4 47/14 50/4
anywhere [6] 7/2 9/1 9/15 21/18 36/9 40/2
APPEARANCES [1] 2/1
applied [1] 18/24
appropriate [2] 29/10 31/3
approval [1] 30/14
archive [6] 6/14 16/8 16/9 16/11 17/17 18/24
archived [6] 6/7 15/24 16/3 16/6 16/7 16/13
16/22 30/9
archived Rick [1] 16/8
archives [1] 8/17
archiving [1] 18/8
archiving emails [1] 16/8
are [45] 3/17 4/20 7/1 7/7 10/12 11/7 13/5
13/11 16/17 18/3 19/6 20/23 21/2 21/10 21/13
21/24 22/13 23/12 23/13 24/16 25/1 25/2
25/10 25/20 28/3 29/21 29/22 30/1 31/24 32/3
32/25 33/15 33/16 33/17 34/19 35/9 35/16
36/21 38/12 39/6 39/6 39/20 42/14 42/18
44/19
aren't [1] 5/2
arguing [1] 48/8
argument [2] 15/6 32/18
around [1] 30/15
articulate [11] 15/21 21/19 22/1 24/1 25/4
27/10 33/8 35/5 35/25 38/18 44/10
articulated [4] 27/13 34/3 38/21 43/9
as [15] 7/25 7/25 19/23 19/23 21/10 22/20
22/20 25/9 26/8 26/9 27/10 34/8 40/13 40/13
42/12 48/16
ask [6] 23/11 33/21 40/12 40/18 46/25 49/24
asked [3] 10/19 43/3 48/11
asking [8] 17/24 25/2 33/20 40/6 40/8 40/15
42/14 42/21
Associates [1] 52/7
attempt [2] 34/22 37/14
attempt to [1] 37/14
August [2] 3/21 7/4
August 3rd [2] 3/21 7/4
automatically [1] 13/25
availability [1] 49/7
available [1] 48/20
Avenue [2] 1/25 2/17
avoid [2] 34/23 37/14
away [5] 15/10 28/5 28/8 28/8 37/19

Transcription of a Telephone Call - September 5, 2018

**B**

backup [3] 7/7 7/9 7/10
bad [1] 49/4
BANKRUPTCY [4] 1/1 1/4 51/1 51/4
Barnabas [1] 2/11
barri [1] 13/16
barrier [1] 43/17
based [5] 4/17 11/19 31/14 32/1 32/15
basis [15] 5/25 11/10 17/8 20/5 20/6 20/10
20/16 39/16 39/23 40/20 41/1 41/1 42/1 47/8
47/23
be [52] 3/10 5/18 8/3 9/4 9/5 9/18 9/24 11/3
12/13 13/18 14/5 15/21 15/22 16/16 16/17
17/6 18/6 18/8 18/10 18/20 19/5 19/21 20/5
20/9 21/13 26/5 26/17 28/19 29/6 29/10 29/11
30/3 30/17 30/20 30/25 31/4 32/13 33/24 34/9
34/20 38/21 39/15 39/18 39/21 40/10 41/13
41/14 41/17 43/14 44/20 48/15 49/8
because [33] 6/17 9/5 15/20 15/22 17/2 19/18
19/20 20/3 20/11 21/19 24/18 26/1 26/19
27/18 26/1 29/7 30/7 30/10 30/12 31/24 33/7
36/12 37/14 38/5 38/4 39/9 41/9 42/7 42/9
42/11 42/17 43/15 45/9
because of [1] 29/7
because there's [1] 15/22
because we [1] 41/9
been [22] 4/10 4/18 5/9 6/24 10/15 11/24
13/21 16/21 17/4 24/2 25/12 26/11 27/22
27/22 31/20 36/7 37/25 41/8 41/14 41/22
41/23 45/15
before [7] 1/22 5/14 19/13 26/11 37/4 37/11
47/7
beginning [2] 38/1 38/2
behalf [1] 46/16
being [5] 4/17 15/1 27/24 36/13 37/21
belief [7] 24/8 24/10 32/1 32/15 35/6 42/25
43/4
belief that [1] 42/25
believe [19] 3/17 5/18 17/8 20/5 21/25 25/17
25/19 28/25 36/11 37/22 37/23 38/5 38/13
39/5 40/20 44/15 45/16 47/5 49/3
believe that [1] 47/5
besides [1] 44/20
between [10] 5/2 5/18 11/3 12/16 15/17 16/3
18/7 35/18 41/17 42/24
beyond [3] 29/16 39/24 43/4
Blatzik [1] 2/9
big [1] 19/5
bjh [2] 1/8 51/8
bjh7 [2] 1/4 51/4
body [1] 14/12
boggling [1] 23/3
both [1] 39/14
box [4] 43/15 43/21 43/23 43/24
boxes [1] 5/8
brief [1] 31/22
bring [7] 19/1 21/18 21/24 25/3 26/1 34/2 35/4
broad [3] 3/18 10/24 27/19
broadly [2] 29/16 40/13
brought [3] 5/14 29/11 47/6
Building [1] 2/10
bullying [1] 38/11
burden [2] 19/3 26/23
burdensome [3] 10/18 30/4 38/22
business [3] 2/11 7/23 8/5

but our [1] 3/21
Bye [1] 50/10

**C**

call [6] 1/15 1/20 3/5 31/20 42/18 51/14
came [2] 24/24 37/2
can [35] 3/8 6/5 6/10 6/11 9/15 12/12 15/18
15/19 16/20 16/20 19/1 20/2 21/19 21/25 24/1
24/21 25/4 26/1 27/10 28/19 30/11 31/13 33/8
53/21 33/22 34/3 35/5 40/14 41/5 41/9 42/3
42/4 44/10 44/21 46/25
can't [35] 4/13 4/13 5/17 5/25 6/3 8/3 9/7
10/1 11/1 11/1 11/9 15/14 15/18 15/21 15/25
16/10 17/10 18/12 18/24 19/19 21/14 25/14
25/14 25/16 25/18 26/7 26/9 34/25 34/25
36/21 40/10 41/6 43/8 43/22 45/11
can't Rick [1] 16/10
capability [1] 18/15
Carrollton [1] 52/9
carry [4] 11/25 11/25 14/20 39/15
case [22] 4/1 7/24 15/6 18/3 19/10 19/22 20/2
28/2 28/2 26/5 27/25 28/1 28/4 50/17 31/1
31/22 34/16 34/18 35/16 37/16 38/24 39/2
cause [2] 1/21 47/11
Center [1] 2/11
central [1] 17/4
certain [1] 40/4
certainly [7] 11/7 21/15 21/24 22/18 28/20
30/21 33/6
CERTIFICATE [2] 51/13 52/6
Certified [3] 1/23 51/17 52/1
certify [2] 51/18 51/21
change [1] 3/25
changed [3] 27/25 36/14 36/15
Chapter [4] 1/3 1/7 51/3 51/7
character [1] 34/9
chase [1] 34/18
check [1] 48/21
choice [1] 17/11
claim [1] 18/4
clear [21] 6/25 7/25 10/20 11/11 18/9 19/7
20/6 21/21 23/7 24/6 26/15 26/4 28/9 31/12
32/14 32/24 34/4 34/19 42/7 43/14 44/12
clearly [6] 17/24 26/20 27/23 38/13 41/16
41/19
client [1] 12/20
client's [1] 40/22
close [1] 35/9
colleagues [1] 10/1
come [6] 6/4 31/13 36/9 37/12 41/4 46/15
communication [1] 41/17
communications [19] 3/24 4/3 4/15 5/2 5/5
5/18 8/9 11/3 15/17 18/23 17/1 17/4 18/7
23/17 27/14 28/11 35/18 42/24 43/5
communications on [1] 17/4
company [3] 16/13 19/12 25/8
Compel [2] 5/15 48/1
compelled [1] 31/18
complete [1] 34/18
completely [1] 37/20
complied [4] 17/20 29/1 29/3 33/3
complying [1] 27/3
compromise [1] 17/14
conciliate [1] 33/12
concrete [2] 31/2 32/1
conduct [6] 10/17 22/3 27/9 28/3 29/21 29/23

35/20 36/8
conducted [1] 38/12
conducting [1] 35/9
confident [1] 6/8
confined [1] 23/23
confirm [5] 11/8 33/22 40/22 42/2 42/7 49/24
confirmed [2] 11/25 44/23
confirming [1] 39/25
confirms [1] 40/24
consider [5] 22/18 25/2 33/11 36/2 44/11
consigned [1] 13/5
consignment [41] 4/17 4/19 5/24 8/14 8/20
9/1 9/13 9/15 11/12 11/22 11/24 12/8 12/12
12/15 12/16 13/4 18/9 20/15 20/19 22/14
23/20 24/3 24/17 27/19 28/7 28/11 33/23 36/2
36/16 36/18 38/20 38/18 39/21 39/25 40/23
41/25 43/10 45/24 47/8 47/16 47/24
consignments [1] 40/5
consistent [10] 7/25 11/11 14/21 14/23 17/21
19/24 20/6 21/21 23/6 36/12
consumer [1] 49/16
contact [2] 6/7 9/14
contemporaneously [1] 11/18
contempt [4] 28/24 29/10 29/15 48/25
context [2] 31/3 32/21
continue [2] 11/10 41/1
continuing [1] 42/6
contract [6] 8/20 12/6 12/11 12/11 13/4 24/15
contractor [2] 20/14 21/5
contradict [7] 20/6 20/9 24/9 31/12 34/1 35/7
38/5
contradicts [2] 32/14 34/4
conversation [2] 14/3 44/21
conversations [1] 45/25
copied [3] 45/9 45/10 45/15
copies [3] 35/10 44/2 44/8
copy [6] 6/22
corporate [4] 19/20 20/4 25/24 34/16
corporation [1] 19/5
correct [2] 14/13 22/4
cost [2] 6/11 6/12
could [18] 7/14 8/3 9/18 18/21 20/5 20/9
21/20 24/9 31/12 32/13 33/9 35/7 35/25 38/6
38/18 41/13 41/14 44/10
couldn't [2] 8/2 41/10
counsel [1] 51/21
couple [2] 49/12 49/17
course [10] 4/1 4/18 18/2 18/6 23/18 26/15
32/22 33/1 36/16 38/8
course issues [1] 4/1
court [42] 1/1 3/11 5/1 5/4 7/19 12/3 12/24
15/17 17/16 17/20 17/21 18/2 19/2 24/14 25/1
26/1 26/16 26/21 27/1 27/4 27/6 30/13 30/17
30/20 31/17 31/17 31/22 31/25 32/3 34/5
35/17 38/8 38/13 38/14 47/5 42/17 44/14
48/11 48/13 49/3 49/20 51/1
Court's [4] 10/12 29/1 29/3 48/2
courts [2] 7/20 30/25
crazy [2] 7/15 15/1
create [3] 8/25 12/12 21/20
created [2] 20/21 26/15
credit [3] 13/10 13/11 13/12
Crest [1] 52/8
CRN [1] 12/7
cross [1] 18/22
cross-examine [1] 18/22

ScheduleDefenseContempiAppx.098

## Transcription of a Telephone Call – September 5, 2018

**C**

CSR [2] 52/6 52/6

**D**

DALLAS [5] 1/2 1/25 2/5 2/1/ 51/2
date [16] 12/23 12/24 14/13 14/19 14/19 14/21 19/14 21/22 26/11 34/20 41/3 47/16 48/11 48/16 48/22 52/7
dates [8] 20/7 28/20 31/2 32/4 34/24 38/3 39/10 39/14
Davor [11] 5/5 10/5 11/23 17/23 18/9 23/6 24/15 25/5 28/9 30/8 47/13
day [12] 7/14 7/17 7/18 7/21 18/2 19/12 25/22 26/8 30/24 49/13 49/20 52/1
days [1] 25/25
de [9] 6/7 15/24 16/3 16/9 16/11 18/13 16/22 18/24 30/9
de-archive [3] 16/9 16/11 18/24
de-archived [6] 6/7 15/24 16/3 16/13 16/22 30/9
deal [1] 19/5
debtor [13] 1/5 8/9 12/8 16/4 16/23 16/23 18/17 19/13 27/14 33/17 40/5 46/16 51/5
debtors [1] 18/7
decide [1] 28/17
decision [1] 7/23
declarant [1] 40/25
declaration [1] 12/1
defendant [4] 1/11 2/8 37/18 51/11
defense [9] 4/11 4/18 15/12 18/5 25/11 26/16 37/15 39/7 41/5
defenses [1] 36/1
definitely [1] 26/10
delivered [1] 13/4
delivering [2] 9/17 18/11
delivery [14] 12/23 12/24 14/14 20/7 21/21 28/20 31/2 32/4 34/19 34/24 38/3 39/10 39/14 41/3
demands [1] 15/2
denied [2] 4/11 31/7
depose [1] 21/13
deposition [6] 9/5 9/7 9/10 9/25 18/22 33/13
despite [1] 9/3
destroy [2] 7/12 26/4
destroyed [1] 35/9
destroying [3] 20/1 25/18 25/20
destruction [1] 25/23
did [16] 7/12 7/13 7/17 9/2 12/15 17/25 18/20 23/5 23/10 29/4 34/10 3 /15 37/8 37/12 40/12 47/13 48/14 48/19
didn't [7] 5/9 8/13 13/13 14/8 14/9 24/20 37/7
different [5] 6/19 15/7 44/21 47/2 47/9
difficult [1] 29/20
diligence [1] 47/3
disagree [3] 24/13 36/11 45/21
disagreed [1] 32/19
disagreement [1] 12/5
disaster [1] 7/9
disclosure [1] 21/3
disclosures [1] 20/24
discovery [10] 3/5 4/6 23/2 23/5 24/16 25/2 28/3 28/4 29/2 49/2
discuss [4] 3/5 39/12 41/5 41/18
discussed [4] 23/20 23/21 23/22 36/13
discussed plenty [1] 23/20

discussing [1] 4/19
discussion [7] 9/14 17/22 17/23 17/23 25/15 35/17 39/17 40/23
discussion of [1] 17/23
discussions [1] 34/21
dispart [1] 25/11
dispute [1] 21/21
disputes [1] 3/6
DISTRICT [2] 1/1 51/1
DIVISION [2] 1/2 51/2
do [28] 6/5 6/8 6/10 6/11 11/12 15/18 15/19 15/19 17/18 18/16 18/16 18/16 18/17 25/12 25/22 30/6 30/14 30/18 34/13 34/15 34/17 35/3 35/3 37/20 41/7 47/14 48/10 48/11
docket [1] 49/16
document [8] 11/5 12/21 14/22 23/12 35/10 35/22 35/24 38/2
documentation [2] 15/9 15/12
documents [15] 11/2 11/8 11/9 18/20 26/17 29/7 31/11 31/18 32/2 35/21 36/21 39/14 41/3 42/21 45/22
documents that [1] 39/14
does [5] 7/21 8/22 12/10 25/21 32/17
doesn't [15] 6/22 7/15 17/18 18/13 27/19 38/20 39/3 39/19 39/22 43/17 43/18 43/23 44/3 45/10 45/13
dollar [1] 19/4
dollars [1] 39/1
dollars that [1] 39/1
don't [108]
don't have [1] 22/22
Dondi [1] 3/7
done [2] 34/8 37/10
down [3] 4/16 8/4 41/2
Drive [1] 52/6
due [1] 47/3
duty [1] 47/3

**E**

earmarked [1] 9/17
economic [1] 43/16
either [6] 6/1 7/11 11/24 14/9 22/23 25/17
else [7] 4/12 6/5 6/23 15/6 22/6 43/9 50/6
else you've [1] 22/6
email [14] 2/6 2/13 2/19 4/15 5/2 5/8 10/1 10/2 10/5 17/6 21/11 37/2 45/10 45/17
emails [1] 4/19
emails [61]
embodying [1] 10/11
employed [1] 51/22
employee [6] 16/8 18/9 20/14 21/5 21/7 24/16
employee that [1] 16/6
employees [4] 16/24 22/12 36/22 41/20
end [3] 46/10 50/6 50/11
engage [1] 22/6
enough [4] 24/16 39/21 49/9 49/20
entire [3] 25/24 26/3 38/13
entirely [2] 4/1 26/16
entitled [6] 12/18 12/19 13/11 21/15 23/2 27/16
especially [1] 29/21
evaluate [4] 4/13 34/25 37/15 41/3
evaluation [1] 41/4
even [9] 5/21 9/18 11/20 16/16 25/5 34/20 37/12 39/15 43/5
evenly [1] 19/24

ever [3] 9/2 19/7 20/21
every [10] 7/18 7/21 12/21 12/22 14/22 15/6 19/12 23/24 26/8 37/18
everyone [3] 15/6 33/17 40/7
everything [2] 3/8 3/9
evi [1] 31/5
evidence [50] 4/10 4/14 9/1 9/23 11/11 11/17 12/14 12/19 12/23 12/25 20/1 20/6 20/21 21/19 24/5 24/6 24/9 24/23 25/17 25/18 25/22 26/4 26/12 31/2 31/6 31/8 31/12 31/14 32/2 32/14 32/15 33/24 33/25 34/4 34/5 34/14 35/1 35/2 37/15 37/18 39/9 39/24 40/24 42/7 42/10 42/11 42/12 42/14 44/15 44/15 47/4
exactly [2] 7/8 40/14
examine [1] 18/22
exchanged [1] 5/10
exclusive [1] 13/7
excuse [3] 16/9 50/23 41/13
exhibits [1] 9/9
exist [15] 5/16 7/2 11/2 14/25 15/16 18/13 18/16 21/15 24/11 29/7 38/20 38/22 43/18 44/5 44/19
existence [1] 8/13
exists [3] 10/22 24/8 35/6
expect [1] 16/17
expedition [3] 24/7 40/5 40/3
expeditions [1] 39/24
expensive [2] 30/8 30/12
Expiration [1] 52/7
explain [5] 9/15 22/17 28/21 31/19 38/1
explained [10] 5/13 5/14 12/1 24/13 31/16 31/20 31/21 31/25 32/5 32/10
explaining [1] 12/2
explanation [2] 21/14 31/14
extending [2] 13/10 13/12
extant [3] 11/2 18/14 23/15
extremely [1] 40/9

**F**

fact [12] 6/13 6/21 9/16 18/10 20/21 21/21 29/6 30/8 32/24 39/8 39/25 41/24
facts [2] 9/20 31/7
fall [2] 15/20 33/7
fair [1] 29/14
faith [23] 19/5 20/6 20/8 20/10 20/16 27/3 29/11 31/14 32/1 32/14 34/1 36/6 39/16 39/23 41/1 42/1 42/7 42/25 43/4 44/16 47/5 47/8 47/23 49/4
far [4] 22/20 26/9 29/18 40/13
Fax [4] 2/6 2/13 2/18 52/9
fed [1] 4/10
Federal [2] 7/16 26/13
FedEx [1] 38/15
feel [2] 37/4 37/13
feeling [1] 3/22
feels [1] 4/9
fees [1] 36/11
few [1] 39/11
fewer [1] 17/15
figure [1] 33/15
file [6] 13/13 28/23 48/25 49/1 49/9 49/10
filed [1] 15/3
financially [1] 51/24
financing [2] 13/14 13/24
find [6] 3/12 5/25 6/3 7/20 20/11 33/18
finding [1] 5/22

Transcription of a Telephone Call – September 5, 2018

**F**

fine [6] 14/25 24/14 49/4 49/11 49/24 50/2
Firm [1] 52/9
first [3] 19/15 26/12 29/3
fishing [5] 24/7 39/24 40/2 40/3 48/3
focused [1] 26/22
folder [1] 6/19
following [1] 1/20
forever [1] 39/9
form [3] 5/23 7/2 7/19
former [3] 20/14 21/5 21/7
forth [1] 4/7
Fortune [2] 0/9 7/18
found [5] 10/16 24/11 24/18 47/7 47/23
four [2] 40/7 40/14
frankly [5] 11/9 33/2 34/3 34/17 38/12
front [20] 12/3 12/24 15/12 18/2 24/19 24/20
24/21 24/25 25/1 26/21 27/1 27/5 31/25 32/25
33/1 35/18 38/12 38/13 44/14 48/14
full [1] 43/21
fully [2] 28/25 29/3
further [7] 14/4 21/14 22/3 35/17 35/20 51/21
51/24
Furthermore [1] 10/10

**G**

gains [1] 40/20
gave [2] 24/6 45/24
general [2] 3/24 23/17
Genovese [17] 4/4 8/18 9/4 10/6 10/23 14/23
16/3 16/10 16/12 16/12 17/7 21/13 33/12
33/21 41/13 41/21 47/2
Genovese's [4] 8/8 8/16 17/8 34/8
get [5] 7/21 13/10 19/12 27/5 30/13
gets [3] 7/16 19/12 26/8
getting [1] 3/11
give [2] 31/21 49/10
given [3] 3/8 16/18 26/25
go [14] 3/3 4/23 4/24 8/2 11/4 15/19 20/2
21/18 24/7 28/5 33/6 39/23 40/14 49/5
goes [1] 28/6
going [29] 4/25 9/24 11/4 19/1 20/11 21/18
23/14 27/7 27/8 28/16 28/17 28/23 30/3 30/19
30/20 35/19 35/20 35/23 35/24 36/3 40/19
40/19 44/11 45/20 45/23 45/23 48/15 48/25
49/1
gone [6] 7/1 19/8 28/8 33/1 33/18 45/7
good [25] 9/16 20/4 20/8 20/10 20/15 27/3
29/11 31/13 32/1 32/14 34/1 35/6 35/13 39/16
39/23 41/1 42/1 42/6 42/24 43/4 44/16 47/5
47/6 47/23 49/22
goods [4] 5/24 12/16 12/17 14/20
goose [1] 34/18
got [16] 3/21 6/10 7/16 8/20 9/9 9/20 12/13
13/19 18/8 19/11 20/13 24/21 25/6 42/1 42/17
43/11
gotten [3] 6/18 6/25 19/7
greatly [1] 30/7
ground [9] 4/5 5/6 8/9 10/5 18/10 23/22 23/24
28/12 47/12
guess [2] 4/8 19/1
guesses [1] 32/12
guy [1] 22/8
guys [10] 3/15 3/19 8/19 28/22 31/9 31/16
35/8 47/19 48/7 50/7

**H**

had [21] 3/16 3/23 6/20 7/8 14/10 14/10 14/11
16/3 16/23 27/13 28/2 29/5 33/19 3./3 38/19
42/24 43/4 43/5 43/9 45/19 46/8
half [1] 39/1
hand [7] 4/10 11/16 11/25 11/25 14/20 35/8
39/15
hand-carry [3] 11/25 11/25 39/15
hand-fed [1] 4/10
hand-selected [1] 11/16
handful [1] 6/7
handpicked [1] 31/6
happen [1] 36/4
happened [1] 48/22
happening [2] 12/7 20/7
happens [1] 19/21
happy [2] 28/18 29/6
hard [1] 21/1
HARDT [1] 2/3
HARR [1] 2/3
Harris [3] 1/23 51/17 52/6
has [26] 13/9 14/5 15/8 16/11 16/12 27/22
27/25 30/24 31/17 31/20 34/12 36/8 36/14
38/15 37/18 37/25 40/25 43/24 43/24 4./2
47/22 48/11 48/20 49/12 49/20 49/25
hasn't [3] 16/13 28/7 47/1
have [171]
have articulated [1] 38/21
have Rick [1] 16/4
have that [1] 41/16
haven't [11] 6/17 6/25 13/16 15/24 17/13
17/14 26/16 26/18 30/9 43/9 47/18
haven't gotten [1] 6/25
having [6] 3/4 15/4 17/4 20/25 34/20 34/23
he [37] 5/5 8/7 8/9 9/12 9/15 9/17 9/25 10/16
10/20 10/21 10/21 11/23 16/11 17/5 17/24
23/7 23/7 23/8 24/18 24/19 24/21 28/10 28/19
29/25 33/22 33/24 39/19 41/13 41/14 41/23
46/25 48/14 48/19 48/19 48/22 49/12 49/24
he's [9] 10/19 17/2 24/17 24/21 28/17 29/24
46/12 48/14 47/7
heard [1] 3/18
hearing [6] 23/20 28/15 29/17 32/19 38/13
40/16
helpful [1] 9/5
here [15] 3/11 6/5 8/6 12/24 15/1 19/17 21/24
29/1 37/20 37/25 42/1 42/6 46/15 47/22 48/15
hereby [1] 51/9
herring [1] 34/18
hesitation [1] 49/12
hiding [1] 38/5
highly [1] 18/20
HILL [9] 1/4 3/24 5/10 5/11 9/14 10/25 11/21
22/18 51/4
him [13] 24/18 24/20 24/21 24/25 25/2 39/20
41/17 41/20 46/23 46/25 48/25 48/14 48/21
himself [1] 9/4
his [12] 8/16 9/7 9/13 9/13 9/24 10/1 33/13
33/22 41/24 46/11 49/7 49/14
hold [2] 26/10 28/23
honest [1] 37/21
hoping [1] 3/7
hospital [3] 1/4 14/18 51/4
hour [1] 49/25
hour's [1] 50/1

**H (cont.)**

hours [2] 49/13 49/17
how [6] 12/6 16/1/ 24/1 31/8 31/10 34/12
31/23 48/19
huge [1] 19/4
hugely [1] 30/4
huh [1] 50/3

**I**

I think [1] 44/4
I'd [2] 6/17 29/6
I'll [1] 36/6
I'm [14] 3/7 4/23 6/8 7/6 13/20 14/11 14/25
18/23 20/25 20/25 37/17 41/12 45/20 45/21
I've [5] 24/13 31/20 32/5 32/10 41/5
identified [17] 10/4 10/6 10/24 17/12 17/25
20/24 21/3 21/10 22/7 23/6 23/8 37/7 37/9
38/23 40/4 40/5 45/8
identify [4] 22/16 23/13 33/9 37/13
imagine [2] 26/7 26/9
impeaching [1] 34/9
implantation [1] 14/20
implanted [2] 13/5 14/17
importantly [2] 18/1 27/25
inbox [2] 6/19 6/21
INC [2] 1/10 51/10
incredibly [1] 25/6
indicate [2] 47/15 48/19
indicated [2] 16/2 30/22
indiscernible [2] 37/6 46/23
individual [4] 23/9 36/1 38/18 38/19
individuals [4] 8/17 21/2 23/13 27/11
information [10] 19/17 20/13 30/5 35/14 35/21
43/16 43/24 44/1 46/20 48/3
instance [1] 20/4
intent [1] 26/4
intentional [2] 25/23 25/25
interested [1] 51/25
interim [1] 4/19
interpret [1] 12/6
interpretation [1] 28/15
inventory [21] 8/14 9/1 9/15 15/13 11/22
11/24 12/12 17/1 22/15 22/18 24/3 33/10
33/23 36/2 38/20 39/18 39/21 40/1 40/23
41/25 43/10
investigate [2] 47/8 47/24
investigation [1] 14/5
invoices [1] 9/16
involved [7] 3/11 4/3 24/2 45/4 45/6 45/8
45/11
involvement [1] 45/19
irrelevant [2] 35/12 35/18
is [118]
isn't [2] 17/9 43/23
issue [14] 4/17 12/24 13/3 15/4 17/4 19/11
23/20 26/20 28/5 28/6 28/7 28/2 39/12 44/13
issues [13] 4/1 18/1 18/3 18/5 19/14 26/14
26/25 28/1 28/2 34/19 36/19 38/24 43/5
it [92]
it's [45] 6/12 6/13 7/25 8/4 10/10 10/16 12/4
12/13 14/6 15/12 17/3 18/8 19/8 20/19 21/18
23/2 24/5 24/6 24/23 26/21 27/2 27/5 27/18
27/20 30/3 30/7 30/12 30/14 34/22 36/12
36/19 38/13 40/8 40/10 41/2 41/14 41/19 42/7
42/9 44/5 44/14 47/21 48/8 49/4 49/18
items [2] 6/19 39/11
its [4] 12/23 15/6 34/19 38/1

Transcription of a Telephone Call – September 5, 2018

**J**

johnson [1] 2/19
John [1] 2/16
Johnson [2] 2/16
JUDE [15] 1/10 10/16 12/7 13/7 13/9 23/3
25/17 28/23 30/23 33/20 38/4 37/21 37/25
38/4 51/10
Jude's [2] 29/8 29/15
Judge [7] 15/13 28/17 32/19 32/25 33/4 47/7
47/22
judged [1] 15/6
Judgment [4] 12/3 17/22 21/17 24/19
Julia [1] 52/7
Julian [8] 2/3 3/2 11/19 13/15 15/6 20/23 34/6
47/14
July [1] 3/15
July 25th [1] 3/15
just [30] 4/13 7/6 8/18 9/18 9/21 11/4 21/6
21/23 22/19 24/23 28/16 30/2 34/17 35/17
36/3 36/6 36/25 37/14 38/10 39/16 41/1 41/19
41/25 42/1 43/11 43/15 43/22 48/24 49/6
49/24
just got [1] 43/11
justify [1] 24/16
ivasek [1] 2/6

**K**

KARLAS [1] 2/10
keep [4] 40/19 42/16 42/18 48/8
key [1] 6/8
kicks [1] 19/18
kind [1] 13/25
kmksc.com [2] 2/13 2/14
knew [1] 19/13
know [39]
knowledge [4] 21/11 22/10 22/21 48/10
knowledgeable [1] 4/5
KOHNER [1] 2/10
KOPF [1] 2/3

**L**

L.L.P [2] 1/25 2/16
landscape [4] 3/25 27/25 36/14 36/15
language [1] 13/8
last [4] 32/7 32/11 34/7 49/14
Latin [1] 43/22
law [5] 19/22 20/3 26/2 28/4 34/16
law's [1] 7/24
laying [2] 30/16 31/22
leads [1] 47/5
least [3] 17/13 48/23 49/25
left [3] 9/18 9/19 21/23
legitimate [1] 26/7
Leonard [12] 16/8 16/11 17/1 21/8 39/18
41/12 41/17 42/13 45/4 46/5 46/6 46/24
Leonard's [2] 8/7 16/4
let [5] 21/13 23/11 28/16 39/12 48/18
let's [3] 12/11 43/14 43/21
letter [7] 3/14 3/15 3/20 6/20 7/4 30/22 40/14
letters [3] 6/18 18/3 31/21
liar [2] 33/24 41/13
lien [3] 13/9 14/10 14/17
like [12] 4/9 6/17 6/25 8/19 22/16 27/9 28/16
28/19 37/13 45/14 48/24 49/19
likely [1] 22/7

limit [2] 5/9 56/18
limitations [1] 10/12
limited [3] 10/10 17/23 49/7
line [1] 25/2
Liquidation [2] 1/5 51/5
list [7] 16/18 22/11 22/19 24/6 37/3 38/22
43/11
listing [1] 12/15
literally [2] 7/18 19/12
litigation [2] 8/4 26/10
little [2] 15/7 34/15
LLC [2] 1/4 51/4
local [1] 3/7
logical [1] 15/5
long [7] 7/10 7/25 19/13 19/23 22/19 29/21
33/18
long-term [1] 7/10
longer [3] 18/3 18/5 28/3
look [15] 5/1 13/9 14/24 17/11 17/15 18/15
20/2 26/10 34/16 34/23 34/23 44/17 47/4
48/18 49/22
looked [3] 43/17 47/18 47/19
looking [7] 5/5 7/5 9/8 18/7 23/7 23/8 28/10
looks [1] 49/19
lose [1] 7/13
lost [1] 8/3
lot [3] 30/5 30/15 47/19

**M**

made [2] 5/5 32/18
maintained [1] 14/16
make [5] 7/15 7/23 39/3 42/16 49/12
MANN [1] 2/10
manner [1] 14/6
may [3] 3/10 8/4 28/19
maybe [5] 3/7 8/1 8/2 18/14 32/13
imbialzik [1] 2/13
me [14] 5/21 12/9 16/9 23/11 23/16 25/22
30/4 30/23 35/9 41/13 44/18 48/13 48/18 52/1
mean [55]
meaningful [8] 24/3 25/11 25/15 25/16 33/11
33/19
means [1] 13/8
MEDICAL [2] 1/10 51/10
Melinda [2] 2/9 3/4
mentioned [1] 37/3
merit [2] 15/7 26/21
merits [15] 24/20 24/21 24/24 25/1 25/3 25/12
27/4 27/5 31/24 32/25 32/25 34/23 35/1 35/16
37/14 38/12
met [1] 27/3
might [13] 3/24 5/18 10/2 11/3 11/24 15/21
16/17 20/9 26/5 28/2 33/24 35/14 43/4
might've [3] 4/15 5/9 9/25 27/15 27/15 38/19
41/22 45/14
million [1] 39/1
Milwaukee [1] 2/12
mind [1] 23/2
mine [1] 48/18
minutes [2] 32/8 52/11
miscommunication [1] 46/8
misremembering [1] 41/14
mistaken [1] 41/13
money [2] 16/1 30/15
months [1] 26/11
more [22] 17/9 17/10 17/10 18/1 18/15 19/3

23/13 25/4 25/7 25/9 26/23 27/24 32/7 32/10
36/7 40/18 40/21 44/10 44/19 44/19 45/22
49/8
moreover [6] 12/1/ 17/6 19/19 20/4 29/1
36/14
morning [1] 50/8
most [2] 4/4 49/1
motion [17] 3/9 4/7 5/14 9/3 12/22 19/2 21/16
24/19 28/20 28/23 29/9 33/6 35/5 42/4 46/11
48/25 49/1
motivated [1] 16/21
Mr [5] 2/3 2/9 2/18 41/12 42/13
Mr. [9] 4/4 9/4 21/13 33/12 33/21 34/8 41/17
41/21 47/2
Mr Genovese [7] 4/4 9/4 21/13 33/12 33/21
41/21 47/2
Mr. Genovese's [1] 34/8
Mr. Leonard [1] 41/17
Ms [1] 2/9
much [5] 3/10 23/13 44/10 45/22 48/19
multibillion [1] 19/4
multibillion-dollar [1] 19/4
MUNSCH [1] 2/3
munsch.com [1] 2/6
must've [1] 46/8
my [1] 49/11

**N**

name [7] 45/16 45/24 45/25 46/2 46/3 46/7
46/9
names [5] 16/18 22/20 29/25 30/8 36/3
narrow [2] 40/9 40/11
narrowed [1] 26/14
narrowed the [1] 26/14
near [1] 40/2
necessarily [3] 6/22 16/22 27/19
need [11] 9/20 13/20 13/24 21/14 27/5 28/3
37/15 37/18 42/2 48/7 48/10
needed [2] 23/17 37/19
needs [3] 27/4 30/17 30/24
negotiated [1] 10/10
negotiations [1] 25/16
neither [1] 51/21
never [3] 3/18 31/25 37/3
new [15] 13/10 13/11 14/19 14/21 23/12
25/11 26/16 29/1/ 29/25 37/9 37/13 37/15
38/3 39/7 41/4
no [59]
No. [2] 6/9 7/16
No. 111 [2] 6/9 7/16
none [4] 14/1 25/12 29/22 30/1
nonexistent [1] 22/14
North [2] 2/4 2/11
NORTHERN [2] 1/1 51/1
not [74]
not the [1] 23/19
nothing [9] 8/13 9/18 9/19 11/8 30/2 34/1
36/24 40/10 48/4
notice [1] 28/10
now [9] 4/16 22/19 24/21 25/1 33/18 37/8
39/11 48/3
nowhere [1] 7/1
numbered [1] 1/21
numerous [1] 19/22